NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC,<br><br>                Plaintiffs,<br><br>    v.<br><br>DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ.,<br><br>                Defendants. | Civil Action No. 23-2272 (GC) (JBD)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Defendants Daniel P. Mayer, Jacqueline Burger, and Frank Glaser's Motions to Dismiss (ECF Nos. 15 & 16) Plaintiffs Carl J. Mayer and Mayer Law Group, LLC's Amended Complaint (ECF No. 13). Plaintiffs opposed, and Defendants replied. (ECF Nos. 19 to 21.) The Court has carefully considered the parties' submissions and decides the Motions without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motions are **DENIED**.

**I.    BACKGROUND**[1]

      Plaintiff Carl J. Mayer is a New Jersey attorney and the sole member of the Mayer Law Group, LLC. (ECF No. 13 ¶¶ 8-9.) Defendant Daniel P. Mayer is Carl's brother, and Defendants Jacqueline Burger and Frank Glaser are Carl's cousins. (*Id.* ¶¶ 22, 28.)

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Since February 2021, Defendants have accused Carl of taking financial advantage of his elderly father "by stealing tens of thousands of dollars of [his father's] money, and by denying family members . . . access to" his father. (*Id.* ¶¶ 27-28.) On March 31, 2022, after a dispute arose between Carl's father and the father's landlord, Defendants contacted the landlord and the landlord's attorney and informed them that Carl's father "was unable to pay his rent . . . because 'Carl stole all of [his father's] money.'" (*Id.* ¶¶ 32-34.) These statements were relayed to "a prominent New Jersey class action attorney" with whom Carl and Mayer Law regularly work on cases "valued in the millions of dollars." (*Id.* ¶ 36.) Since then, "Carl has had less contact with [the attorney] and other New Jersey class action attorneys than at any other point" in Carl's career. (*Id.* ¶ 37.) Defendants repeated their statements on specific dates between March 24 and June 24, 2022 to multiple other third parties, including other prominent attorneys with whom Carl had a relationship. (*Id.* ¶¶ 40-51.) Because Carl and Mayer Law "are well-known in the New Jersey class action legal community," their practice "depends on his personal and professional reputation for honesty and trustworthiness." (*Id.* ¶¶ 7, 18.) But Defendant's statements have caused Plaintiffs reputational harm, lost "current and prospective business opportunities," and a loss of thirty to sixty percent of Mayer Law's gross annual revenue. (*Id.* ¶¶ 37-38, 53.)

On March 31, 2023, Carl filed his original Complaint in the Superior Court of New Jersey, Mercer County, as the sole Plaintiff. (ECF No. 1-1.) After Defendants removed the case to federal court and filed motions to dismiss (ECF Nos. 1, 10-11), Carl filed an Amended Complaint and added Mayer Law as a Plaintiff (ECF No. 13). In the Amended Complaint, Plaintiffs assert claims for defamation (Count I), trade libel (Count II), and tortious interference with prospective economic advantage and contractual relations (Count III).[2]

---

[2] The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1).

II.     **STANDARD OF REVIEW**

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Directors of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020).

III.    **DISCUSSION**

    A.     **Count I – Defamation**

        1.     *Statute of Limitations*

In New Jersey, a "defamation action must be filed within one year of the publication of an actionable writing or utterance." *Petro-Lubricant Testing Laboratories, Inc. v. Adelman*, 184 A.3d 457, 465 (N.J. 2018); N.J. Stat. Ann. § 2A:14-3. "Generally, every repetition of a defamatory writing or utterance gives rise to a separate cause of action under the multiple publication rule." *Petro-Lubricant*, 184 A.3d at 465 (citations omitted).

Here, Plaintiffs base their single count of defamation on multiple alleged statements made between March 24 and June 24, 2022.  (ECF No. 13 ¶¶ 58-64.)  Carl filed his original Complaint in Superior Court on March 31, 2023.  (ECF No. 1-1.)  In consequence, neither Plaintiff can predicate their defamation claim on the alleged March 24, 2022 statement (ECF No. 13 ¶¶ 51, 64), because the statute of limitations for that statement expired before Carl filed the original Complaint. *See Petro-Lubricant*, 184 A.3d at 465.

As for the remainder of Carl's defamation claim for statements made between March 31 and June 24, 2022, the Court finds, and Defendants do not dispute, that those statements are not time-barred.  *Id.*; *see also* Restatement (Second) of Torts § 577A cmt. a (March 2024 Update) ("[E]ach communication of the same defamatory matter by the same defamer, whether to a new person or to the same person, is a separate and distinct publication, for which a separate cause of action arises.").

Mayer Law, however, did not assert a claim for defamation until July 12, 2023, when Carl filed the Amended Complaint and added Mayer Law as a Plaintiff.  (*See* ECF No. 13 at 23.[3])  Therefore, the one-year statute of limitations bars Mayer Law's defamation claim unless it relates back to Carl's original Complaint filed on March 31, 2023 under Rule 15(c).  *See, e.g.*, *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 386 (D.N.J. 2011).

Under Rule 15(c), an amended pleading adding new defendants can relate back to the date of the original pleading if both pleadings arise out of the same "conduct, transaction, or occurrence," and if, within the relevant period for service, the new defendants (1) "received such notice of the action that it will not be prejudiced in defending on the merits," and (2) "knew or should have

---

[3]   Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

4

known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Rule 15(c)(1)(B)-(C).  Though the Rule "does not directly contemplate the addition of plaintiffs to an existing action, . . . courts have applied the basic principles of that rule to the addition of plaintiffs." *Major Tours*, 799 F. Supp. 2d at 386 (citing *Nelson v. Cnty. of Allegheny*, 60 F.3d 1010, 1014 n.7 (3d Cir. 1995)).  And because amendments under Rule 15 must be "'freely given when justice so requires' . . . federal courts have applied Rule 15(c) broadly." *In re Sharps Run Assocs., L.P.*, 157 B.R. 766, 780 (D.N.J. 1993) (quoting Rule 15(a)); *see also Yanes v. The Minute Maid Co.*, Civ No. 02-2712, 2006 WL 1207992, at *3 (D.N.J. May 3, 2006) (noting that because an original timely complaint already puts "defendants on their guard," the addition of new plaintiffs "poses less serious problems than the addition of new defendants" (citing *Fashion Novelty Corp. of N.J. v. Cocker Mach. & Foundry Co.*, 331 F. Supp. 960, 964 (D.N.J. 1971))).

Here, Mayer Law's defamation claim in the Amended Complaint arises out of the same events that are asserted in Carl's original defamation claim.  The alleged defamatory statements and recipients are largely the same in both complaints.  (*Compare* ECF No. 13 ¶¶ 34-51, *with* ECF No. 1-1 ¶¶ 28-40.)  Although the Amended Complaint adds and omits several alleged recipients of the statements and alleges dates with more precision than the original Complaint, the addition of Mayer Law as a Plaintiff "does not alter the known facts and issues upon which" the original defamation claim was based.  *See Yanes*, 2006 WL 1207992, at *4.  Thus, Mayer Law's defamation claim arises out of the same "conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading."  Rule 15(c)(1)(B).

Moreover, Defendants will not be prejudiced if Mayer Law's defamation claim relates back to the original Complaint, because the evidence relevant to defend against Mayer Law's claim "will be similar to, if not the same as," the evidence that would have been necessary to defend

5

Carl's original defamation claim. *See Yanes*, 2006 WL 1207992, at *4; Rule 15(c)(1)(C)(i).

Finally, the Court is satisfied that based upon the original Complaint, Defendants knew or should have known of Mayer Law's potential involvement in this action. *See* Rule 15(c)(1)(C)(ii). Carl is Mayer Law's sole member, a fact that he alleges in both the original and amended complaints. (ECF No. 13 ¶ 9 ("Plaintiff . . . is the sole manager/member of [Mayer Law]."); ECF No. 1-1 ¶ 14 ("Carl is the principal of [Mayer Law].").) Thus, Carl has "an identity of interest with" Mayer Law. *Yanes*, 2006 WL 1207992, at *4; *see also Fashion Novelty Corp.*, 331 F. Supp. at 965 (allowing an amended complaint to relate back where there was "virtual identity" between the original and new plaintiffs). Both complaints highlight the importance of Carl's professional reputation in New Jersey's "class action bar," and allege that the defamatory statements made to other members of that practice group have damaged Carl's reputation and business. (ECF No. 13 ¶¶ 21, 72-75; ECF No. 1-1 ¶¶ 17, 50-53.) Therefore, "the same actions" in each complaint "are the source of injury to both" Carl and Mayer Law. *See Yanes*, 2006 WL 1207992, at *4. The addition of Mayer Law's defamation claim "after the applicable statute of limitations may have run . . . in no way alters the known facts and issues on which the action is based." *Id.* at *3 (quoting *Staren v. Am. Nat'l Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976)).

For these reasons, Mayer Law's defamation claim relates back to Plaintiff's original Complaint filed on March 31, 2023, and is therefore not time-barred. *Cf. Major Tours*, 799 F. Supp. 2d at 386 (finding that new plaintiffs' claims were time-barred because "nothing in the complaint suggested the identities of these later-added Plaintiffs or gave notice that they would be bringing these claims"); *Nelson*, 60 F.3d at 1015 (finding that a fourth amended complaint adding two new plaintiffs did not relate back to the original complaint because the defendants had no reason to know that "but for a mistake," they would have been sued directly by the new plaintiffs).

6

### *2. Failure to State a Claim*

Defendants argue that even if Mayer Law's claim is not time-barred, Mayer Law fails to state a claim for defamation because the alleged statements concern only Carl in his personal capacity and not Mayer Law. (ECF No. 15-1 at 24; ECF No. 16-1 at 24.) To state a claim for defamation under New Jersey law, Plaintiffs must allege (1) that the defendant made a false and defamatory statement of fact concerning the Plaintiffs, (2) the unprivileged publication of that statement to a third party, (3) a sufficient degree of fault, and (4) damages. *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004); *see Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 189 (3d Cir. 1998) (applying the law of the forum state in a diversity action). "That the defamatory statements be 'of and concerning' a plaintiff is an indispensable prerequisite to an action for defamation." *Schiavone Const. Co. v. Time, Inc.*, 619 F. Supp. 684, 696 (D.N.J. 1985) (citing *Durski v. Chaneles*, 419 A.2d 1134 (N.J. Super. Ct. App. Div. 1980)).

Here, Plaintiffs allege that all three Defendants stated to third parties at multiple times that "Carl stole all of [his father's] money" and "denied family members access to" his father. (ECF No. 13 ¶¶ 34, 46-47.) Plaintiffs argue that although these statements do not explicitly refer to Mayer Law, "the actual naming of plaintiff is not a necessary element in an action for libel. It is enough that . . . those who read or hear the libel reasonably understand the plaintiff to be the person intended." *Schiavone*, 619 F. Supp. at 696 (quoting *Dijkstra v. Westerink*, 401 A.2d 1118, 1120 (N.J. Super. Ct. App. Div. 1979)). "[I]f the applicability of the defamatory matter to the plaintiff depends upon extrinsic circumstances, it must appear that some person who saw or read it was familiar with the circumstances and reasonably believed that it referred to the plaintiff." *Taj Mahal Travel*, 164 F.3d at 189 (quoting *Gnapinsky v. Goldyn*, 128 A.2d 697, 703 (N.J. 1957)). In that light, Plaintiffs assert that because Carl is Mayer's Law's sole member, an accusation that Carl

7

stole money may reasonably be understood to implicate Mayer Law. (ECF No. 19 at 24.)

Plaintiffs also allege that Defendants made statements to multiple "third-party attorneys in the close-knit New Jersey class-action bar," accusing Carl of stealing all of his father's money. *Id.* (citing ECF No. 13 ¶¶ 21, 33-35, 46-47, 55-61).) These third parties were familiar with Carl and his namesake law firm, of which Carl is the sole member. (ECF No. 13 ¶¶ 9, 35-37, 46-47.) And as a result of these statements, Mayer Law allegedly suffered a loss of revenue. (ECF No. 13 ¶ 75.) On a motion to dismiss, the Court finds that Plaintiffs have alleged enough facts when construed in Plaintiffs' favor, showing that these third-party attorneys may have reasonably understood the statements to implicate Mayer Law. *Taj Mahal Travel*, 164 F.3d at 190.

Other courts have permitted individuals to bring defamation actions in analogous circumstances, where the alleged statements referred to "a small business owned and operated by" a few individuals, or "a sole proprietorship, particularly where, as here, the name of the individual plaintiff and that of the enterprise are the same." *See Schiavone*, 619 F. Supp. at 696-67 (internal citations omitted) (finding that a defamatory statement referring to plaintiff Schiavone Construction Company "may reasonably be understood as referring to" plaintiff Ronald A. Schiavone, the company's Chief Executive Officer); *see also Jovanovic v. Northrop Gruman Corp.*, Civ. No. 05-4487, 2010 WL 1644690, at *4 (D.N.J. Apr. 22, 2010) (distinguishing *Schiavone* because there, "the named Plaintiff, Ronald A. Schiavone, and corporate entity, Schiavone Construction Company, were considered synonymous with one another such that defamatory allegations concerning one would automatically be imputed to the other").

To be sure, Plaintiffs ultimately must prove that these third parties reasonably found these statements to be "of and concerning" Mayer Law, and that Defendants were at least "negligent in failing to anticipate that the statement might be viewed as referring to" Mayer Law. *Schiavone*,

8

619 F. Supp. at 697 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974)). Though a factfinder may find that these statements did not concern Mayer Law, "at this stage of the litigation, this ambiguity may not be resolved against" Plaintiffs. *Taj Mahal Travel*, 164 F.3d at 190. The Court therefore finds that given Plaintiffs' allegations, the alleged statements are capable of defamatory meaning directed at Mayer Law.

Defendants further argue that the Amended Complaint violates Rule 8 because some of the allegations do not specify which Defendant uttered the statements. (ECF No. 15-1 at 17; ECF No. 16-1 at 20 (citing *Karupiayan v. Infosys, BPM*, Civ. No. 21-20796, 2023 WL 1452340, at *2 (D.N.J. Jan. 27, 2023)).) The Court disagrees. The Amended Complaint differentiates between statements allegedly uttered only by Daniel Mayer (ECF No. 13 ¶¶ 34, 40, 50, 51); Glaser (*id.* ¶ 49); and by all three Defendants (*id.* ¶¶ 33-34, 46-47). Thus, the Amended Complaint is unlike the four-hundred-paragraph complaint dismissed in *Karupiayan v. Infosys, BPM*, where it was unclear which of the forty counts applied to the thirty-two named defendants. 2023 WL 1452340, at *2.

Burger and Glaser contend that their alleged statements to Carl's father's landlord on March 31, 2022 are subject to a qualified privilege "on the face of the pleadings alone," because Burger and Glaser had a legitimate interest in making the statements to protect their "uncle from the threat of eviction."[4] (ECF No. 16-1 at 26.) New Jersey courts recognize a "conditional special-interest privilege" where the party communicating otherwise defamatory statements had an "interest" or "duty" to make the statements, and made them to "a person having a corresponding

---

[4] "New Jersey courts have recognized that otherwise defamatory statements may be 'privileged' and thus unactionable if they are made 'in furtherance of a socially important interest that is entitled to protection, even at the expense of uncompensated harm to a plaintiff's reputation.'" *First Nat'l Prop. Mgmt. v. Chapman*, Civ. No. 23-603, 2024 WL 230115, at *6 (D.N.J. Jan. 22, 2024) (quoting *Salzano v. N. Jersey Media Grp., Inc.*, 993 A.2d 778, 781 (N.J. 2010)).

interest or duty." *See Bainhauer v. Manoukian*, 520 A.2d 1154, 1169 (N.J. Super. Ct. App. Div. 1987) (applying the privilege where a physician reported to other surgeons that a colleague had caused the death of a patient, because the parties shared a common interest in matters "affecting the quality of health care"). But at the motion-to-dismiss stage, it must be "clear from the face of the Complaint that Defendants are entitled to a qualified privilege." *Mangan v. Corp. Synergies Grp., Inc.*, 834 F. Supp. 2d 199, 208 (D.N.J. 2011). And New Jersey has not adopted a privilege for otherwise defamatory statements meant to protect "the 'well-being' of family members." *Gregory v. Gregory*, Civ. No. 15-320, 2015 WL 6408016, at *4-5 (D.N.J. Oct. 21, 2015).

Here, Plaintiffs allege that after a dispute arose between Carl's father and his landlord, the Defendants "falsely stated to" the landlord and his attorney that Carl's father "was unable to pay his rent . . . because 'Carl stole all of [his father's] money.'" (ECF No. 13 ¶¶ 32-34.) The Amended Complaint provides no additional facts surrounding the dispute that rise to the level of a qualified privilege, such as a pending eviction. Thus, there "is not enough information [in the Amended Complaint] for the Court to assess whether [the third parties'] receipt of the statements was pertinent" to qualify as privileged. *Id.* at *5 (internal quotations omitted). "That Defendant[s] apparently 'felt compelled' to share" this belief with their uncle's landlord is, at this stage, "insufficient." *Id.* (quoting *Cruz v. HSBC*, Civ. No. 10-135, 2010 WL 2989987, at *5 (D.N.J. Jul. 26, 2010). In addition, the familial relationships privilege generally applies to immediate family members only. *See Gregory*, 2015 WL 6408016, at *4 (citing New Jersey Model Jury Charge (Civil) 3.11B, "Private Defamation" (June 2014) ¶ 5). Therefore, "recognizing a qualified privilege at this point is inappropriate." *Id.*

Finally, Burger and Glaser argue that Carl is a limited-purpose public figure and has failed to plead the requisite fault of actual malice. (ECF No. 16-1 at 29-30.) But Plaintiff has pled that

10

Defendants made these statements with actual malice. (ECF No. 13 ¶¶ 3, 31, 35, 66.) And as Daniel Mayer concedes, at this stage, "it is only necessary that Plaintiffs adequately plead actual malice and/or negligence," and a determination as to which level of fault will ultimately apply "cannot be made in the absence of an adequate record." (*See* ECF No. 20 at 10.) *See Churchill Downs, Inc. NLR Entertainment, LLC v. Carstanjen*, Civ. No. 14-3342, 2015 WL 5854134, at *9 (D.N.J. Oct. 5, 2015) (McNulty, J.) (finding "generic allegation[s]" of the defendant's state of mind sufficient to survive a motion to dismiss because "a party's state of mind often cannot be demonstrated directly," so "[m]alice . . . may be alleged generally").

For these reasons, the Court denies Defendants' Motions to Dismiss as to Count I.

### B.  Count II – Trade Libel

In New Jersey, the elements of trade libel are (1) publication; (2) with malice; (3) of false allegations concerning a plaintiff's property, product, or business; and (4) special damages, i.e., pecuniary harm. *Mayflower Transit, LLC v. Prince*, 314 F. Supp. 2d 362, 378 (D.N.J. 2004); *see also Patel v. Soriano*, 848 A.2d 803, 834 (N.J. Super. Ct. App. Div. 2004), *cert. denied*, 861 A.2d 845 (N.J. 2004). The statement "must play a material part in inducing others not to deal with plaintiff." *Patel*, 848 A.2d at 834. Here, Defendants argue that Plaintiffs' claim for trade libel fails because the alleged statements concern not Plaintiffs' "property, product, or business," but Carl's "personal characteristics," and thus apply only to Plaintiffs' defamation claim. (ECF No. 15-1 at 27; ECF No. 16-1 at 31.) Defendants also assert that Plaintiffs have2 not sufficiently alleged special damages. (*Id.*)

"Defamation of a corporation injures the reputation of the corporation: product disparagement injures the reputation of its products." *Mayflower*, 314 F. Supp. 2d at 377 (citation omitted). But claims for trade libel "may possess substantial overlap with that of libel," and a

11

"statement may be actionable under both theories." *Id.* (quoting *Dairy Stores, Inc. v. Sentinel Pub. Co., Inc.*, 516 A.2d 220, 224-25 (N.J. 1986) (holding that a statement that a company sold water contaminated with chlorine and kept the source of its bottled water a "well-guarded secret" could be found to have disparaged not only the company's product, but also its corporate reputation)). For example, claims for personal defamation may be imputed from claims for trade libel "where the imputation fairly implied is that the plaintiff is dishonest or lacking in integrity." *Patel*, 848 A.2d at 248 (quoting W. Page Keeton et al., *Prosser & Keeton on the Law of Torts* § 128, at 965 (5th ed. 1984)).

Here, Plaintiffs have alleged sufficient facts establishing that statements attacking Carl's personal characteristics, made to other class-action attorneys with whom Carl has professional relationships, can also concern Plaintiffs' "property, product, or business," given that Carl is the sole principal of the law firm that bears his name. *See Dairy Stores*, 516 A.2d at 224. According to Plaintiffs, by accusing Carl of stealing his father's money, Defendants induced other class-action attorneys to reduce or eliminate their dealings with both Carl and Mayer Law. (ECF No. 13 ¶¶ 37, 46-48, 81.) That the statements impugn Carl's personal characteristics does not mean that they cannot, as a matter of law, simultaneously disparage his business. *See Dairy Stores*, 516 A.2d at 224 ("[A] statement may be actionable under both theories."). Where the alleged statements were made to other attorneys who work with Carl and his law firm — and of which, again, Carl is the sole member — such statements are both "potentially defamatory" and "might reflect on [Carl's] business," particularly, as here, where the statements were made "in the context of identified business dealings." *See Churchill Downs*, 2015 WL 5854134, at *8 (allowing a claim for both defamation and trade libel to survive a motion to dismiss because statements calling the plaintiff a "fraud," "thief," and "untrustworthy" were both potentially defamatory and reflective of the

plaintiff's business).

Finally, by alleging that as a result of the statements, other named attorneys have failed to deal with Plaintiffs (ECF No. 13 ¶¶ 37, 46-48, 81), and that Plaintiffs have suffered a thirty-to-sixty-percent loss of reported gross revenue in the past year (*id.* ¶ 85), Plaintiffs have sufficiently alleged special damages. *See Churchill Downs*, 2015 WL 5854134, at *8 (denying a motion to dismiss a claim for trade libel even though the allegations of damages were "quite thin"); *Pactiv Corp. v. Perk-Up, Inc.*, Civ. No. 08-5072, 2009 WL 2568105, at *11 (D.N.J. Aug. 18, 2009) (finding that a party's claim of "lost sales and lost goodwill regarding established and prospective customers" was sufficient to survive a motion to dismiss); *Juliano v. ITT Corp.*, Civ. No. 90-1575, 1991 WL 10023, at *5-6 (D.N.J. Jan. 22, 1991) (denying a request for preliminary injunctive relief on a claim for trade libel because the plaintiff alleged neither a loss of particular customers by name, nor a general diminution in its business).

Defendants' Motions to Dismiss are therefore denied as to Count II.

### C. *Tortious Interference with Prospective Economic Advantage and Contractual Relations*

Defendants argue that Plaintiffs have not pled any one of the elements necessary to state a claim of tortious interference. (ECF No. 15-1 at 34; ECF No. 16-1 at 35-38.) Under New Jersey law, to state a prima facie case for tortious interference with both an existing contract and a prospective economic advantage, a plaintiff must show that (1) the plaintiff "had an existing contract or reasonable expectation of economic benefit or advantage," (2) "the defendant knew of the contract or expectancy," (3) "the defendant wrongfully interfered with that contract or expectancy," (4) "it is reasonably probable that the loss of the contract or prospective economic gain was a result of the interference," and (5) "damages resulted from the interference." *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 525 (D.N.J. 1998).

Here, Plaintiffs have pled both an existing contractual relationship with one of the attorneys who heard Defendants' alleged statements (ECF No. 13 ¶ 37) and a reasonable expectation of prospective economic advantage with other New Jersey attorneys and firms (*id.* ¶¶ 38, 46-47, 87-88). Plaintiffs allege that Defendants knew of Plaintiffs' existing business relationships and prospective economic advantages, and that their statements would interfere with such interests. (*Id.* ¶ 90.) Plaintiffs also claim that Defendants' interference damaged Plaintiffs' existing business relationships with other New Jersey attorneys and firms (*id.* ¶¶ 37-38, 88), as well as "prospective business opportunities" (*id.* ¶¶ 38, 91).

Again, Plaintiffs have the ultimate burden to prove Defendants' knowledge of such relationships, that their statements caused Plaintiffs' damages, and that such damages were a "reasonably probable" consequence of the statements. *See Patel*, 848 A.2d at 831-32. But at the motion-to-dismiss stage, it is reasonable to infer that Defendants — all of whom are Carl's family members and two of whom are attorneys — were aware of Carl's reputation as an attorney, and that their statements to other prominent attorneys could interfere with Carl's existing business. (ECF No. 13 ¶¶ 7, 46-47.) *See Florian*, 11 F. Supp. 2d at 525 (finding that although the pleading failed to expressly allege the defendant's knowledge of existing or anticipated contracts, such knowledge was reasonable to infer from the complaint at the motion-to-dismiss stage). Further, "a plaintiff need not identify specific lost business opportunities in its pleading for tortious interference." *N. Star Mgmt., Inc. v. Ins. Pros., Inc.*, Civ. No. 12-3839, 2013 WL 5334412, at *4 (D.N.J. Sep. 23, 2013) (citing *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, Civ. No. 06-2256, 2007 WL 2459349, at *4 (D.N.J. Aug. 24, 2007)). Consequently, at this early stage, Defendants' Motions to Dismiss Count III are denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss (ECF Nos. 15 & 16) are **DENIED**. An appropriate Order follows.

Dated: March 26, 2024

*Georgette Castner*
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

15