# KENT/McBRIDE

**1040 Kings Highway North, Suite 600**
**Cherry Hill, NJ. 08034**
**Phone:  856 667 3113**
**Fax:  856 667 4003**
**Fax:  856 667 1966**
**www.kentmcbride.com**

Kathryn V. McCallion, Esquire
Direct Dial: 856 382 3657
kmccallion@kentmcbride.com

December 4, 2024

*Via ECF/PACER*
The Honorable J. Brendan Day, U.S.M.J.
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Courtroom 7E
Trenton, New Jersey 08609

> **RE:**    **Carl J. Mayer, Esquire v. Daniel P. Mayer, Esq., et al.**
>              **Docket No.:  Civ. A. No. 3:23-civ-02272 (GC)/(JBD)**

Dear Judge Day:

Our Firm represents Defendants, Jacqueline Burger, Esq. and Frank M. Glaser, Esq. in the above-referenced matter. I write jointly on behalf of all parties pursuant to Your Honor's order directing the parties to submit a joint discovery status letter by December 4, 2024.

Although the parties have narrowed the issues regarding claims of deficient discovery, a few issues remain outstanding which are detailed below.

## PLAINTIFFS' POSITION

### I.    ESI Data

The parties are at an impasse on Plaintiffs' demand for ESI/metadata and/or native document production from all Defendants. Defendants refuse to provide any ESI and/or metadata as requested in the Plaintiffs' Requests for Production of Documents ("RFPs") and Rule 34.

Defendants' pdf document production is facially deficient because Defendants failed to produce electronically stored information (ESI) and document metadata as Plaintiffs demanded and as Rule 34 requires. It appears that electronic documents like emails and text messages were printed out as pdfs by Defendants. This is improper, and Defendants must re-produce all electronic documents with metadata and ESI. *Compare* Plaintiffs' RFPs Instruction Nos. 4-6 (demanding all ESI, metadata, and underlying electronic data), *with*, *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D.418, 424-27 (D.N.J. 2009) (affirming parties' right to demand ESI metadata/native documents under case law and FRCP 34 and discussing parties' duty to produce ESI metadata).

The failure to produce (and collect) ESI and metadata has serious implications. For example, Defendants' deficient pdf production makes it impossible for Plaintiffs to search documents produced and determine: (1) the validity of the documents produced; (2) the custodians

Honorable Judge Day
December 4, 2024
2

(email domain names and cell phone devices) collected and searched; (3) the date and time of any collection; (4) and other information necessary for Plaintiffs to prepare for trial. By way of example only, Defendants have produced the following types of incomplete pdfs:  (i) JFDOC1_016 (text message chain with unconfirmed recipients and senders); (ii) DANIELPROD#1_00051 (purported email dated March 10, 2022 from Daniel to Bill Taylor without discernable recipient or cc information). Plaintiffs also cannot tell from pdf print outs whether Defendants produced accurate copies of documents and in some cases, Plaintiffs cannot review cut off text. *See, e.g.*, JFDOC1_016 at 5 (purported text message string dated January 7, 2023 with illegible cut off text). Defendants must completely respond to the RFPs, including producing ESI and metadata as requested and required.

## II.    Interrogatory 13 (Document Preservation Methods)

Interrogatory No. 13 sought information regarding how, if at all, defendants preserved and maintained documents and communications during the relevant time period. There is nothing privileged, confidential or improper about asking a party to identify their method of storing, preserving, and producing documents. *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 704-05 (D.N.J. 2015). (collecting cases and observing that boilerplate objections are "inappropriate and results in waiver of the objection"); *accord Bush v. Bass Energy Servs.*, 2023 WL 6542761, at *4 (M.D. Pa. Oct. 6, 2023) (same).

Defendants' document preservation methods (or non-methods) are relevant to the issues in the case. Interrogatory No. 13 asks Defendants to "identify and describe" their "methods" and "programs" for "creating, saving, storing, maintaining, sharing, backing up, and restoring documents and communications during the Relevant Time Period." The Defendants refused to provide substantive answers to this interrogatory.

Instead of answering Interrogatory #13 in any substantive way, Defendants object and claim that Plaintiffs are not entitled to "discovery on discovery" or generally claim to be compliant with their discovery obligations, again without answering this Interrogatory substantively.  By way of example, Burger and Glaser both responded that documents produced "were made via Answering Defendant's computer through email and/or text messages. Any verbal communications were made over mobile phone and/or landline." This non-response does not explain how Burger and Glaser stored, preserved, produced, and backed up responsive documents and/or what programs—if any—were used to do so. Defendants' objections to Interrogatory No. 13 are baseless and their non-response prejudices Plaintiffs, particularly given that Defendants' produced electronic documents as pdfs without any ESI.

Honorable Judge Day
December 4, 2024
3

### III.    Redacted Email Communications

Plaintiffs have produced several redacted emails pertaining to communications with counsel because the redacted portion is covered by the attorney-client privilege and does not involve matters that are in issue in the litigation.  United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 555 (App. Div. 1984)(privileged communications may be subject to discovery when they are made a "material issue" in the litigation); State v. Mauti, 208 N.J. 519 (2012)(Where confidential communications are voluntarily placed in issue, they may be subject to discovery).

The pertinent emails were redacted because they involve matters that are not in issue. Having not seen the emails that were redacted, Defendants would have no way of knowing whether or not they are in issue.  Nor have they asserted the basis for their speculation that those portions of the emails that were redacted involve matters in issue.  Hence, the court should either deny the request to turnover the unredacted privileged emails or review them *in camera*.

In addition, the Defendants' claim that no log was provided is without substance.  The actual documents themselves were produced with redactions based upon the attorney client privilege.  The redactions are to a handful of documents that are identified by date, recipient, the person that drafted the email and the nature of the communication. There is no question that the communications are with an attorney, is facially privileged and that the production includes all of the information contained in a privilege log.

### <u>DEFENDANTS' POSITION</u>

As a preliminary matter, the parties agreed to provide Supplemental Answers to Interrogatories after the meet and confer. Plaintiffs' counsel emailed defense counsel regarding the meet and confer and included, within that email, certain limited additional information, but failed to provide formal Supplemental Answers to Interrogatories, signed under oath, as required by Court Rule. F.R.C.P. 33. Daniel's counsel followed up, seeking Supplemental Answers to Interrogatories signed under oath, but received no response to date from Plaintiffs' counsel.

### I.    <u>Problems with Plaintiffs' Document Production (asserted by all Defendants)</u>

Plaintiffs allege they relied on communications from Christopher Placitella, Esq. ("Placitella") as their sole basis for claiming Defendants made defamatory statements to Jack Morrison ("Morrison") and Robert Casey, Esq. ("Casey"). See ECF 13, ¶36; Declaration of Nomi I. Lowy, Esq. ("Lowy Decl."), ¶ 2, Exhibit A (Ans. to Int. No. 1). Nevertheless, Plaintiffs' document production included a number of email communications between Carl and Placitella with the full body of the email messages redacted by Plaintiffs. See, e.g., Lowy Decl., ¶ 3, Exh. B. As set forth more fully below, the redacted documents are directly related to the issue of whether the statements alleged in the First Amended Complaint ("FAC") were actually made, yet Plaintiffs

Honorable Judge Day
December 4, 2024
4

refuse to produce unredacted copies of those email messages, citing attorney-client privilege.[1] Plaintiffs have also failed and refused to provide a privilege log with respect to the redacted documents.[2]

Although Plaintiffs are contending the documents were redacted based on attorney-client privilege, Plaintiffs have never previously asserted Placitella represented Carl and/or his law firm in any capacity. Indeed, in the FAC, Plaintiffs described Placitella in pertinent part as follows:

> 36.     Later, on March 31, 2022, Mr. Christopher M. Placitella, Esq. a prominent New Jersey class action attorney, whom Carl and his law firm MLG regularly work with on litigation efforts in New Jersey and beyond valued in the millions of dollars, contacted Mr. Morrison and Mr. Casey in Princeton, New Jersey regarding the Princeton, New Jersey apartment dispute between Arno and Mr. Morrison.

> 37.     Carl, MLG and Mr. Placitella (including his firm Cohen, Placitella and Roth) are currently co-counsel on a decade-long class action case with anticipated legal fees estimated to be $220,000,000 in the case <u>Desimone v. Springpoint Senior Living, Inc.</u>, Docket No. MID-L-4958-13 (2013) (Viscomi, J. 2013).

ECF 13, ¶¶36, 37. Additionally, Plaintiffs described Placitella in their Answers to Interrogatories as follows:

> Mr. Placitella had been in frequent communication with Mr. Casey (who represented Mr. Morrison, Arno's landlord) concerning a class action lawsuit filed by Arno Mayer against Mr. Morrison. Mr. Placitella generously offered to help resolve the issues between Arno Mayer and Mr. Morrison because Mr. Placitella and Carl Mayer had a long-standing personal and professional relationship dating back forty (40) years.

Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1.

---

[1]It should be noted that Plaintiffs inadvertently produced certain documents (email messages between Carl and attorneys at Fox Rothschild) as part of Plaintiffs' initial document production. Daniel's counsel brought this to Plaintiffs' counsel's attention and, pursuant to RPC 4.4(b), defense counsel stopped reading, deleted the documents inadvertently produced, and took reasonable measures to assure the information was inaccessible. Plaintiffs thereafter produced a second set of documents with communications between Carl and his attorneys at Fox Rothschild redacted. Defendants have no reason to challenge those redactions at this time and, assuming Plaintiffs are claiming attorney-client privilege as to those documents, the redactions are not raised as an issue herein.

[2]While there are other deficiencies with Plaintiffs' responses, including the lack of clarity in certain responses and failure to provide certain information requested, Daniel is not raising them at this juncture as, he submits, they do not directly impact this phase of discovery and can be obtained at a later date if the case moves forward with respect to those issues.

Honorable Judge Day
December 4, 2024
5

Aside from the fact that Carl has never claimed Placitella represented Carl or his law firm in any matter, Carl's claim of attorney-client privilege is dubious for other reasons as well. As Your Honor recalls, Plaintiffs contend that Placitella had a conversation with Casey on March 31, 2022 and that Placitella then allegedly told Carl, "Casey said that your relatives, specifically your brother Daniel, and cousins Jackie and Frank told Casey and Morrison that 'Arno could not pay his rent because I – Carl Mayer – stole all of Arno's money.'" Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1.

However, certain unredacted communications produced by Plaintiffs evidence that ***Carl attempted to have Placitella sign a Declaration attesting that Casey told him Defendants made the defamatory statements to Casey, but Placitella was unwilling to sign the Declaration.*** Specifically, the draft Declaration Carl presented to Placitella for signature provided:

5.    On the March 31, 2022 telephone call, Mr. Casey told me that 'Arno does not have any money because Carl stole it all from him.' When I asked Mr. Casey where he got that idea from, he confirmed that Defendant Jacqueline Burger, Esq., and Defendant Daniel P. Mayer told him and Mr. Morrison that Carl stole all of Arno's money.

Lowy, Decl., ¶ 6, Exh. E (CarlMayer0000026-33). Citing to this language in Paragraph 5 of the draft Declaration, Placitella responded to Carl by saying, "***I don't recall this***[.]" Lowy, Decl., ¶ 6, Exh. E (CarlMayer0000026) (emphasis added). After further urging from Carl to sign the Declaration Placitella wrote in a text message to Carl, ***"I just don't recall this specifically. Would not want to be deposed."*** Lowy, Decl., ¶ 6, Exh. E (CarlMayer0000238) (emphasis added).

Furthermore, Placitella told Carl (contrary to Plaintiffs' assertions in the FAC) in a text message that, even if such statements had been made, they would not have resulted in any damage to Plaintiffs' reputation with Placitella:

[Placitella]: Here is my question. Even if they said that to me how is that damage. I would not believe it or stop any relationship with you.

Lowy, Decl., ¶ 6, Exh. E (CarlMayer0000238).

It is doubtful Placitella would have been providing legal advice to Carl with respect to the claims that Defendants made defamatory statements about Carl to Casey and Morrison (which claims are, according to Plaintiffs, based solely on what Placitella told Carl about a conversation Placitella allegedly had with Casey (see ECF 13, ¶ 36)) when Placitella does not even recall having

Honorable Judge Day
December 4, 2024
6

such a conversation with Casey and told Carl there would not have been any damage to Carl's reputation with Placitella even if the statements had been made. Moreover, Placitella **could not** have been providing legal advice to Plaintiffs in March or April 2022 (the dates on some of the redacted email communications (Lowy Decl., Exh. B, CarlMayer0000001-0000002) with respect to defamatory statements purportedly made to Karen, Felsenthal, Brown, and Naini, as, according to Plaintiffs' FAC, those statements were not alleged to have been made until May 2022. ECF 13, ¶¶ 40, 46, 47, 50.

It is Plaintiffs' burden to demonstrate the redacted information is privileged.[3] <u>Columbus Life Ins. Co. v. Wilmington Tr., N.A.</u>, 344 F.R.D. 207, 218 (D.N.J. 2023) (The burden of proving that a communication is protected by the attorney-client privilege lies with "the person or entity asserting the privilege[.]" Hedden, 82 A.3d at 245.) In a suit based on federal diversity jurisdiction, such as this one, state law governs issues of attorney-client privilege. <u>Allen v. Banner Life Ins. Co.</u>, 340 F.R.D. 232, 237 n.3 (D.N.J. 2022) (citation omitted). "While the federal attorney-client privilege is absolute, the New Jersey state privilege is qualified." <u>Leonen v. Johns-Manville</u>, 135 F.R.D. 94, 98 (D.N.J. 1990) (citations omitted). The privilege "applies to communications (1) in which legal advice is sought, (2) from an attorney acting in his capacity as a legal advisor, (3) and the communication is made in confidence, (4) by the client." <u>Hedden v. Kean Univ.</u>, 434 N.J. Super. 1 (N.J. Super. Ct. App. Div. 2013) (citation omitted); *see also* N.J.R.E. 504 (providing that the privilege is limited to "communications between [a] lawyer and his client in the course of that relationship and in professional confidence").

As indicated <u>supra</u>, Plaintiffs have never asserted Placitella represented Carl and/or his law firm in any capacity until now. In fact, Carl describes Placitella as a business colleague with whom he has also had a long-standing personal relationship. Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1. However, "[c]ommunications which relate to business rather than legal matters do not fall within the protection of the [attorney-client] privilege." <u>Leonen</u>, 235 F.R.D. at 98.

Nonetheless, even if the email messages between Carl and Placitella *had* constituted attorney-client communications (which appears doubtful, as set forth above), they would, in any event, have to be disclosed under the "in-issue" doctrine. The "in-issue" doctrine holds that "the attorney-client shield may be pierced when confidential communications are made a material issue by virtue of the allegations in the pleadings and where such information cannot be secured from any less intrusive source." <u>United Jersey Bank v. Wolosoff</u>, 196 N.J. Super. 553, 555 (Super. Ct. App. Div. 1984); see also <u>Payton v. New Jersey Tpk. Auth.</u>, 148 N.J. 524 (N.J. 1997). To determine whether the in-issue doctrine applies, New Jersey courts consider the Kozlov test, which holds that three foundations must be established by the party seeking to pierce the privilege:

    (1)      there must be a legitimate need for the evidence;

    (2)      the evidence must be relevant and material to the issue before the court; and

---

[3]It should be noted that Plaintiffs must establish the attorney-client privilege with respect to each Plaintiff (Carl and his law firm) and Placitella separately.

Honorable Judge Day
December 4, 2024
7

(3)    by a fair preponderance of the evidence, the party must show that the information
cannot be secured from any less intrusive source.

<u>Hertz Corp. v. Frissora</u>, No. 19-cv-8927, 2020 U.S. Dist. LEXIS 211338, 2020 WL
6616091, at *3 (D.N.J. Nov. 12, 2020) (citing <u>In re Kozlov</u>, 79 N.J. 232 (N.J. 1979)).

Recently, the New Jersey Supreme Court has limited a party's ability to establish the
"need" prong of the Kozlov test to narrow circumstances, including "(1) where a constitutional
right is at stake, or (2) a party has explicitly or implicitly waived the privilege." <u>State v. Mauti</u>,
208 N.J. 519 (N.J. 2012). The Court in <u>Mauti</u> held that "a privilege may be waived 'implicitly'
where a party puts a confidential communication 'in issue' in a litigation" and concluded that "the
party who places a confidential communication in issue voluntarily creates the 'need' for
disclosure of those confidences to the adversary." <u>Id</u>. at 531-32.

Here, Plaintiffs produced the redacted emails in response to Defendants' targeted discovery
requests focusing on whether the statements were actually made. Clearly, these documents go to
the very issue in this phase of the litigation. Indeed, Plaintiffs' counsel confirmed at the meet and
confer that the redacted documents are directly related to the issue of whether the statements
alleged in the FAC were actually made. In which case, Plaintiffs have put these communications
"in issue" and created the need for disclosure to Defendants as the evidence is material to Plaintiffs'
claims and Defendants' ability to defend against same. Defendants cannot secure the information
in these emails through any less intrusive source. Therefore, even if the messages were attorney-
client communications (which Defendants dispute), Plaintiffs waived the attorney-client privilege.

Further, Plaintiffs refusal to produce unredacted emails between Carl and Placitella is an
abuse of the privilege entirely. "A party may not abuse a privilege, including the attorney-client
privilege, by asserting a claim or defense and then refusing to provide the information underlying
that claim or defense based on the privilege." <u>Payton v. N.J. Tpk. Auth.</u>, 148 N.J. 524, 553 (<u>citing
to United Jersey Bank v. Wolosoff</u>, 196 N.J. Super. 553, 565-67 (Super. Ct. App. Div. 1984)). The
New Jersey Supreme Court in <u>Wolosoff</u> noted the inherent inequity in permitting a party to use
the privilege "as a sword rather than a shield." <u>Wolosoff</u>, 196 N.J. Super. at 567. The Court
reasoned that in these scenarios, a party could divulge whatever information is favorable to its
position and assert the privilege to preclude disclosure of detrimental facts, resulting in a half-truth
that "might well be more disabling than a total distortion." <u>Id</u>. That is exactly what would happen
here were Plaintiffs' assertion of privilege sustained. Therefore, in addition to the reasons set forth
above, in the interests of justice, Plaintiffs must produce unredacted versions of the emails between
Carl and Placitella.

Honorable Judge Day
December 4, 2024
8

Additionally, as noted, no privilege log was provided as required.[4]

The Federal Rules require a detailed and specific showing to withhold discovery on grounds of privilege. The production of an inadequate privilege log or none at all, "is contrary to the rule, subjects the party to sanctions under Rule 37(b)(2), and may be viewed as a waiver to the privilege." A withholding party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed– and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

<u>Schaeffer v. Tracey</u>, No. 215CV08836MCASCM, 2017 WL 465913, at *3 (D.N.J. Feb. 2, 2017)(footnotes omitted).

For these reasons, Defendants request that Plaintiffs be required to produce unredacted versions of the email messages between Carl and Placitella.

## II.     <u>Purported issues with Daniel's discovery responses</u>

Daniel's Supplemental Answers to Interrogatories and responses to Plaintiffs' allegations of purported deficiencies must be viewed through the lens of this first phase of discovery that focuses on whether the statements were even made, orally and/or in writing, to the seven alleged recipients as set forth in the FAC. Discovery pertaining to this issue has been exchanged. The additional information Plaintiffs are seeking ignores the scope and purpose of the phased discovery and demands material not relevant to this phase of discovery and/or that is disproportional to the needs of this phase.

The below chart summarizes key information obtained in the first phase of discovery as to whether the statements alleged in the FAC were actually made to the seven alleged recipients.

| SEVEN ALLEGED RECIPIENTS | SUBPOENA RESPONSE | DECLARATION | SUMMARY |
|---|---|---|---|
| Jack Morrison | No responsive written communications evidencing statements were made | None | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella that Defendants** |

---

[4]Plaintiffs also produced a redacted email from Robert E. Lytle to Carl and no privilege log or basis for the redaction have been provided. <u>See</u> Lowy Decl., Exh. B (CarlMayer0000041). Plaintiffs should provide a privilege log with the basis for the redaction.

Honorable Judge Day
December 4, 2024
9

| | | | |
|---|---|---|---|
| | | | made defamatory statements about Carl to Casey and Morrison. (Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1)<br><br>**This is denied under oath by Casey and Daniel. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey.** |
| David Felsenthal, Esq. | No responsive written communications evidencing statements were made | "I can state with certainty that Daniel never communicated to me, orally or in writing, that Carl had stolen all (or any) of their father Arno Mayer's ("Arno") money or that Carl had denied family members access to Arno." (Declaration of Kathryn McCallion, Esq. ("McCallion Decl."), ¶ 3, Exh. 2) | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Eliot Spitzer ("Spitzer") told Carl that Defendants repeated the defamatory statements to Felsenthal. (Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1)<br><br>This is denied under oath by Felsenthal and Daniel.** |
| Robert Casey, Esq. | No responsive written communications evidencing statements were made | "At no time has Daniel stated to me, either orally or in writing, that Carl was stealing their father's money or that Carl was keeping family members and/or | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella Defendants made defamatory statements about Carl to Casey and** |

Honorable Judge Day
December 4, 2024
10

| | | friends from Arno, as Plaintiffs have alleged in the FAC." (McCallion Decl., ¶ 8, Exh. 7) | **Morrison. (Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1)**<br><br>**This is denied under oath by Casey and Daniel. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey.** |
|---|---|---|---|
| Jason Brown, Esq. | Produced email from Carl to Spitzer (who is not one of the seven alleged recipients) and response from Spitzer, copying Brown and others | None | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Brown. (Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1)**<br><br>**This is denied under oath by Daniel.** |
| Dr. Sean Naini | No responsive written communications evidencing statements were made | "…Daniel has never communicated to me, either orally or in writing, that Carl had stolen Arno's money and/or that Carl denied family members access to Arno." (McCallion Decl., ¶ 9, Exh. 8) | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Naini. (Lowy Decl., ¶ 2, Exh. A, Ans. to Int. No. 1)**<br><br>**This is denied under oath by Naini and Daniel.** |
| Karen Zemble | Not served | "In a May 3, 2022 email sent to Michele Burger, myself, Defendant Jacqueline Burger, Esq., Plaintiff Carl | Single email from Daniel to Carl (on which Karen was copied) re: blocking Arno's access to family, does not mention Carl stealing money from his father. |

Honorable Judge Day
December 4, 2024
11

| | | J. Mayer, Esq., and Suzanne Burger, Defendant Daniel P. Mayer falsely stated that Carl 'blocked [Arno's] access to me, his sister, and my kids.' | |
|---|---|---|---|
| Pamela Long | Responded she did not have any more documents related to Mayer case. | Discusses unrelated issues and matters beyond SOL. Declaration does, however, provide: On or about June 24, 2022, Daniel called me and again falsely stated that Carl was manipulating Arno and isolating him from his family and stealing money." | Single telephone conversation within SOL referenced by Long regarding Daniel purportedly making allegedly defamatory statements to her. |

**A. It is unwarranted during this phase of discovery - and totally disproportional to the needs of this case - to require the costly and time-consuming extraction and production of metadata for messages already produced by Defendants (and produced in duplicate by others).**

As noted, Plaintiffs allege in the FAC that Daniel purportedly made defamatory statements both orally and in writing to seven named individuals and discovery has been phased to first determine whether the statements alleged were even made to these individuals. In response to Plaintiffs' document demand, Daniel produced pdf versions of email messages - giving a very generous interpretation of what emails were "responsive" to the requests. In fact, Daniel submits there was only a *single* email message - produced by Daniel and others - dated within the statutory limitations period (from Daniel to Carl on which one of the seven alleged recipients, Karen (Carl's wife), was copied) that actually references Carl keeping Arno Mayer away from family members[5] Lowy Decl., ¶ 4, Exh. C (DANIELPROD#1_00011-12).

---

[5]Daniel is in no way conceding that the statement in the email was, in fact, defamatory, that Plaintiffs suffered any damages as a result of the statement and/or that there are not otherwise

Honorable Judge Day
December 4, 2024
12

Nevertheless, Plaintiffs are insisting that Daniel produce metadata from his email messages. Plaintiffs fail to provide any legitimate need for the data at this stage of discovery. Plaintiffs are already in possession of Daniel's responsive (as liberally construed) email messages and all include, in addition to the substance of the email, the sender, the recipient(s), the date and time sent, and the subject.[6]

Requiring the extraction and production of messages with metadata would be costly, time consuming, non-productive, and clearly not proportional to the needs of the case at this time. <u>See</u> F.R.C.P. 26(b)(1) and (b)(2). *All* of Daniel's email messages have been collected and preserved by a third party vendor, Consilio - at Daniel's own expense. If the matter were to move forward, those messages, including metadata, are available. However, the cost for the vendor to search, extract, and produce the messages would be significant. Lowy Decl., ¶ 5, Exh. D. Indeed, if Plaintiffs press for production of metadata at this time under these circumstances, Plaintiffs should agree to bear the cost of such production.

**B. Daniel has supplemented his Answer to Interrogatory No. 13 and provided a Declaration certifying he <u>*never*</u> texted six of the seven alleged recipients of the defamatory statements, and the only text messages he exchanged (albeit rarely) with the remaining alleged recipient had nothing to do with the Arno Allegations.**

Plaintiffs have asserted Daniel must supplement his Answer to Interrogatory No. 13, which essentially seeks discovery on discovery. The Interrogatory provides:

INTERROGATORY NO. 13. Identify and describe each of Your methods, and programs for creating, saving, storing, maintaining, sharing, backing up, and restoring documents and communications during the Relevant Time Period. For the avoidance of doubt "identify" has the meaning defined above, and includes as well for this interrogatory, the identification of the date that You began to use such system or program or method; the date that You ceased to use such system or program or method; the systems, methods, and programs used; the locations where

_____

myriad defenses to Plaintiffs' claims. Daniel is simply acknowledging, for the purposes of this phase of discovery, that this statement is in the record.

[6]The only exception is a *single* email produced by Daniel that is from Daniel to Bill Taylor (who is not even one of the seven alleged recipients). That email includes the full body of the email, the date and time sent, and shows Daniel as the sender. The only fields not included are the recipient and subject. However, the recipient "Bill" and subject are included within the body of the email (and the recipient is further confirmed through Daniel's answers to interrogatories, signed under oath). Notably, that email is outside the statute of limitations for Plaintiffs' claims and, in any event, does not support a contention that Daniel made the statements to the seven alleged recipients as alleged in the FAC. <u>See</u> Lowy Decl., ¶ 7, Exh. F.

Honorable Judge Day
December 4, 2024
13

the documents and communications are stored or maintained; the locations where
any back-up data or documents are stored, especially and including for those
systems, programs, or methods no longer in active use; the hardware used to store
the documents and communications and any back- ups; the policies governing the
use of the systems, programs, or methods; and the policies governing the retention
of documents and communications.

Lowy Decl., ¶ 8, Exh. G (Interrogatory No. 13 reproduced). Plaintiffs assert in their
deficiency letter such discovery is particularly necessary "given [Daniel's] apparent spoliation."[7]

Daniel has provided a supplemental Answer to Interrogatory No. 13 in which he sets forth,
*inter alia,* the reasons there is no basis for obtaining such discovery. Specifically, as Plaintiffs are
aware, this phase of discovery is focused on whether the statements alleged in FAC were actually
made. Responsive email communications have been produced and there is no allegation of
misconduct or failure to preserve any email messages.

With respect to text message communications, Daniel has provided (contemporaneously
with his Supplemental Answers to Interrogatories) a Declaration attesting to the fact that he has
***never*** texted with six of the seven individuals named in the FAC as having allegedly received the
defamatory statements from him. Lowy Decl., ¶ 9, Exh. H. Thus, no text messages with these
individuals ever existed: (1) Jack Morrison, (2) Robert Casey, Esq., (3) David Felsenthal, Esq., (4)
Jason Brown, Esq., (5) Dr. Sean Naini, and (6) Pamela Long. This is supported by the fact that
none of these six individuals produced copies of text messages with Daniel in response to the
subpoenas served on them in this case. Moreover, none of those individuals who provided
Declarations in this matter (Casey, Felsenthal, Naini, Zemble, and Long) asserted the existence of,
or attached as exhibits, any text messages with Daniel. Lowy Decl., ¶ 9, Exh. H, ¶ 6.

Daniel's Declaration further provides that, although he has texted, albeit rarely, with Carl's
wife, Karen (the only one of the seven alleged recipients with whom Daniel ever texted), those
text messages related to issues such as Carl's health back in the spring of 2019 and one text
message after the death of Arno Mayer in December of 2024, i.e., limited texts on issues wholly
unrelated to statements allegedly made by Daniel as set forth in the FAC. Thus, no responsive text
messages with Karen ever existed. This is supported by Karen's Declaration (submitted by

---

[7]Plaintiffs apparently base their allegation of "spoliation" on a single text message produced by
co-Defendant Jackie Burger (and not by Daniel), who is not one of the seven alleged recipients of
the defamatory statements. In that text message, Jackie describes a text message she sent to Eliot
Spitzer (also not one of the seven alleged recipients). Lowy Decl., ¶ 9, Exh. J (JACKIE FRANK
44). There is no allegation, much less any evidence anywhere in the record, that Daniel failed to
produce any responsive email communications or text messages with the seven alleged recipients
and/or any of the individuals Carl alleges told him of the alleged defamatory statements by Daniel.
Thus, Plaintiffs cannot claim any meaningful deficiency in Daniel's production that would warrant
discovery on discovery at all, much less during this limited phase of discovery.

Honorable Judge Day
December 4, 2024
14

Plaintiffs in an effort to support their claims), which does not include any text messages between Karen and Daniel. Lowy Decl., ¶ 9, Exh. H, ¶ 7.

Furthermore, it is alleged in the FAC that Carl learned from Eliot Spitzer that Daniel purportedly made the defamatory statements to Felsenthal, Brown, and Naini. As set forth in the Declaration, Daniel **never** texted with Eliot Spitzer. Thus, no text messages with Spitzer ever existed. Lowy Decl., ¶ 9, Exh. H, ¶ 8.

In short, Daniel has provided a Declaration certifying he **never** texted with six of the seven alleged recipients or Spitzer and he **never** texted with the seventh alleged recipient (Karen) relating to the purported statements alleged in the FAC. As Your Honor noted in a colloquy with counsel during the October 17, 2024 Status Conference:

> MS. LOWY: …I'm not even sure he text [sic] any or most of these individuals, most of the seven recipients ever. So --
>
> THE COURT: Well, that's exactly my point, is that's the sort of thing that should be hashed out in a meet and confer. Because, you know, it's one thing to say spoliation. It's another thing if the response is 'I didn't text them in the first place.' And so it's a moot issue…And Mr. Sabo, if the text messages that would have been there, you know, if there's a certification that, you know, there's nothing – there was nothing relevant in the first place, that may be a totally different story.

Lowy Decl., ¶ 10, Exh. I, Tr. 32:18-25; 33:1-4. Lowy Decl., Exh. H. There is absolutely no basis for requiring any further supplementation of Daniel's detailed response to Interrogatory No. 13.

### III.    Purported issues with Jackie and Frank's discovery responses

As previously indicated, it is important to emphasize that this initial phase of discovery is focused on whether the alleged defamatory statements were even made, orally and/or in writing, to the seven alleged recipients as set forth in the FAC. From this perspective, the additional information Plaintiffs are demanding from Jackie and Frank's Answers to Interrogatories is not relevant and disproportional to the needs of this phase of discovery.

For reference, Plaintiffs only allege that Jackie and Frank made defamatory statements to four out of the seven alleged recipients as set forth in the FAC, including Jack Morrison, Robert

Honorable Judge Day
December 4, 2024
15

F. Casey, Esq., David Felsenthal, and Jason Brown, Esq. The below chart summarizes information obtained in the first phase of discovery as to whether the statements alleged in the FAC were actually made to the alleged recipients by Jackie and Frank.

| Alleged Recipients | | Subpoena Response | Declaration | Summary |
|---|---|---|---|---|
| **Jack Morrison** | *As to Jackie* | No responsive written communications evidencing statements were made | None | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella that Defendants made defamatory statements about Carl to Casey and Morrison. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).**<br><br>**This is denied under oath by Casey and Jackie. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey.** |
| | *As to Frank* | No responsive written communications evidencing statements were made | None | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella that Defendants made defamatory statements about Carl to Casey and Morrison. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** |

Honorable Judge Day
December 4, 2024
16

| | | | | This is denied under oath by Casey and Frank. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey. |
|---|---|---|---|---|
| **David Felsenthal, Esq.** | *As to Jackie* | No responsive written communications evidencing statements were made | "Additionally, I can state with certainty that Jackie never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno." (McCallion Decl., ¶ 3, Exh. 2). | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Felsenthal. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** <br><br> **This is denied under oath by Felsenthal and Jackie.** |
| | *As to Frank* | No responsive written communications evidencing statements were made | "Additionally, I can state with certainty that Frank never communicated to me, orally or in writing, that Carl had stolen all (or | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Felsenthal. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** |

Honorable Judge Day
December 4, 2024
17

| | | | any) of Arno's money or that Carl had denied family members access to Arno." (McCallion Decl., ¶ 3, Exh. 2). | **This is denied under oath by Felsenthal and Frank.** |
|---|---|---|---|---|
| **Robert Casey, Esq.** | *As to Jackie* | No responsive written communications evidencing statements were made | "I can state with certainty that Jackie never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno." (McCallion Decl., ¶ 4, Exh. 3). | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella Defendants made defamatory statements about Carl to Casey and Morrison. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).**<br><br>**This is denied under oath by Casey and Jackie. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey.** |
| | *As to Frank* | No responsive written communications evidencing statements were made | "Additionally, I can state with certainty that Frank never communicated | **All Plaintiffs have provided is Carl's unsupported, self-serving, triple- hearsay statement that Placitella told Carl that Casey told Placitella** |

Honorable Judge Day
December 4, 2024
18

| | | | to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno. In fact, to the best of my knowledge, I have never communicated with Frank in my life." (McCallion Decl., ¶ 4, Exh. 3). | **Defendants made defamatory statements about Carl to Casey and Morrison. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** <br><br> **This is denied under oath by Casey and Frank. Furthermore, Placitella stated to Carl he does not recall this conversation with Casey.** |
|---|---|---|---|---|
| **Jason Brown, Esq.** | *As to Jackie* | Produced email from Carl to Spitzer (who is not one of the seven alleged recipients) and response from Spitzer, copying Brown and others | None | **All Plaintiffs have provided is Carl's unsupported, self-serving, hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Brown. (McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** <br><br> **This is denied under oath by Jackie.** |
| | *As to Frank* | Produced email from Carl to Spitzer (who is | None | **All Plaintiffs have provided is Carl's unsupported, self-serving,** |

Honorable Judge Day
December 4, 2024
19

| | | not one of the seven alleged recipients) and response from Spitzer, copying Brown and others | | **hearsay statement that Spitzer told Carl that Defendants repeated the defamatory statements to Brown.** **(McCallion Decl., ¶ 2, Exh. 1, Ans. to Int. No. 1).** **This is denied under oath by Frank.** |
|---|---|---|---|---|

### A.     ESI Data

In response to Plaintiffs' document demand, Jackie and Frank produced pdf versions of emails and text messages which all include, in addition to the substance of the communication, the sender, the recipient(s), the date and time sent, and the subject. Nevertheless, Plaintiffs insist that Jackie and Frank produce the metadata from these email and text messages.

As indicated by counsel for Daniel, requiring Defendants to extract and produce the metadata for each email message would be costly, time consuming, non-productive, and not proportional to the needs of the case. See F.R.C.P. 26(b)(1) and (b)(2); see also Lowy Decl., ¶ 5, Exh. D.  Further, Plaintiffs have not alleged that either Defendant engaged in misconduct or altered any relevant communications to support their request for metadata under these circumstances. To the contrary, without an actual need for the metadata, Plaintiffs' request appears to be nothing more than a harassing and vexatious fishing expedition. Either way, it is clear that the burden on Defendants to extract and produce the metadata at this stage of discovery significantly outweighs any frivolous need for same as requested by Plaintiffs.

However, should Plaintiffs continue to demand metadata production, Plaintiffs should agree to bear the cost of same.

### B.     Interrogatory No. 13

Plaintiffs are demanding that Jackie and Frank supplement their answers to Interrogatory No. 13 which generally asks for Defendants to identify and describe their methods and programs for creating, saving, storing, and backing up documents and communications during the Relevant Time Period. See McCallion Decl., ¶ 5, Exh. 4 and ¶ 6, Exh. 5. In their initial answers, Jackie and Frank stated that all documents produced with their discovery responses were retrieved through

Honorable Judge Day
December 4, 2024
20

their computer and/or cell phone. <u>Id</u>. Further, following the parties' meet and confer, Jackie and Frank supplemented their answers to clarify how they searched their computers and phones for relevant communications responsive to discovery and specifically named their internet service provider, cell phone numbers, and email addresses used to communicate during the relevant time period. McCallion Decl., ¶ 7, Exh. 6. Therefore, Jackie and Frank have provided sufficient information to answer Interrogatory No. 13 for purposes of this stage of discovery.

Plaintiffs have not alleged that either Defendant engaged in misconduct or failed to preserve any relevant communications. In which case, there is no basis or need for Jackie and Frank to provide additional supplementation of their detailed responses to Interrogatory No. 13.

*****

Thank you for your time and continued attention to this matter.

Respectfully yours,
**KENT/McBRIDE, P.C.**

BY: _____
Kathryn V. McCallion, Esquire

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4863
Facsimile:  (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant Daniel P. Mayer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., <br><br> Defendants. | Civil Action No. <br> 3:23-cv-02272-GC-JBD <br> Honorable Georgette Castner, U.S.D.J. <br><br> **DECLARATION OF** <br> **NOMI I. LOWY, ESQ.** |

I, Nomi I. Lowy, Esq., of full age, do hereby certify and declare as follows:

1.     I am Counsel with Gibbons P.C., attorneys for Defendant, Daniel P. Mayer ("Daniel"), in the above-captioned matter.  I am providing this Declaration in connection with unresolved discovery issues between the parties.

2.     Attached as *Exhibit A* is a true copy of Carl Mayer's ("Carl") Answers to Daniel's Interrogatories.

3.    Attached as *Exhibit B* is a true copy of redacted email messages between Carl and Christopher Placitella, Esq. produced by Plaintiffs in discovery (Bates Nos. CarlMayer000001-20; 40-41; 44-47; ).

4.    Attached as *Exhibit* C is a true copy of the May 3, 2022 email from Daniel to Carl, on which Karen Zemble was copied. (DANIELPROD#1_00011-12)

5.    Attached as *Exhibit D* is a true copy of the Data Collections and Forensic Rate Sheet of Consilio, a third-party vendor that provides, *inter alia*, ediscovery services and that collected and preserved Daniel's ESI/metadata.

6.    Attached as *Exhibit E* are true copies of email messages between Christopher Placitella and Carl, which were produced in unredacted form by Plaintiffs in response to Defendants' discovery requests in this matter. (CarlMayer0000026-33)

7.    Attached as *Exhibit F* is a true copy of DANIELPROD#1_00051, produced by Daniel with his discovery responses regarding communications with William "Bill" Taylor.

8.    Attached as *Exhibit G* is a true copy of Daniel's Supplemental Answers to Interrogatories.

9.    Attached as *Exhibit H* is a true copy of Daniel's Mayer's November 22, 2024 Declaration.

10.    Attached as *Exhibit I* is a true copy of relevant portions of the Transcript of the October 17, 2024 Status Conference.

11.    Attached as *Exhibit J* is a true copy of JACKIE FRANK 44, produced by co-Defendants Jackie and Frank with their supplemental discovery responses.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:    December 4, 2024

By:    *Nomi I. Lowy*
NOMI I. LOWY, ESQ.

# EXHIBIT A

Carl Mayer's Answers to Daniel's Interrogatories

Jeffrey M. Pollock
Michael W. Sabo
FOX ROTHSCHILD LLP
212 Carnegie Center
Suite 400
Princeton, NJ 08540
(609) 844-3038
JMPollock@foxrothschild.com
MSabo@foxrothschild.com
*Attorneys for Plaintiffs*
*Carl J. Mayer, Esq. and Mayer Law Group, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ.,<br><br>Defendants. | Civil Action No.: 3:23-civ-02272 (GC)/(JBD)<br><br>[FILED ELECTRONICALLY] |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO**
**DEFENDANT DANIEL P. MAYER'S INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Civil Rules 26.1 and 33.1 of the District of New Jersey, Plaintiffs Carl J. Mayer, Esq. and Mayer Law Group, LLC ("Plaintiffs"), hereby object and respond to the Interrogatories ("Interrogatories") propounded by Defendant, Daniel P. Mayer ("Defendant"), as set forth below. The responses reflect Plaintiffs' present knowledge of the matters covered by Defendant's Interrogatories and their best efforts to identify the information and documents responsive to those Interrogatories.

Plaintiffs' efforts are continuing, however, and they reserve the right to amend or supplement the responses and objections herein as may be necessary or appropriate in the future.

As to objections,

FOX ROTHSCHILD LLP
*Attorneys for Plaintiffs*
*Carl J. Mayer, Esq. and Mayer Law Group, LLC*

By:   s/ Jeffrey M. Pollock
             Jeffrey M. Pollock, Esq.

Dated: September 24, 2024      Michael W. Sabo, Esq.

## PRELIMINARY STATEMENT

1.      By responding to these interrogatories, Plaintiffs do not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, or any other objections and/or grounds for exclusion that may be applicable at trial or other hearing or proceeding, all of which objections and grounds are expressly reserved and may be made at the time of trial or other hearing or proceeding; (b) the right on any ground to the use of the documents produced in response to the interrogatory in any hearing or trial or at any other point during the litigation; (c) the right to object on any ground at any time to a demand for further response to these interrogatories; and (d) the right at any time to revise, correct, add to, supplement, or clarify any of the responses contained therein.

2.      Plaintiffs' responses and objections are made solely for the purposes of this action and for no other purpose and are supplied subject to that limitation. Plaintiffs reserve the right to object on any ground to the use of documents produced in response to these interrogatories for any purpose, in whole or in part, in any subsequent proceeding, in this or any other action.

3.      Any statement made by Plaintiffs in these responses that they will produce any documents responsive to a particular interrogatory is not an admission by Plaintiffs to the existence or non-existence of specific responsive documents or information, that any information contained within the responses is relevant or admissible as evidence, or that any statement or characterization propounded in the interrogatory is accurate or complete.

4.      Plaintiffs' responses to these interrogatories shall not be construed as a waiver of the confidentiality of any such information produced or not produced. To the extent that Plaintiffs respond to an interrogatory by producing or not producing documents, all such information is subject to the protective order to be entered in this case (the "Confidentiality Order"), and all responses must be treated accordingly.

5.      Plaintiffs reserve the right at any time to revise, supplement, correct, clarify, or add to these responses and objections, or to revise, supplement, correct, clarify, or add to any production of information made pursuant to these interrogatories. Plaintiffs further reserve the right to object on any ground at any time to a demand for further answers to these interrogatories.

6.      Plaintiffs' responses are based upon reasonable review and diligent investigation conducted to date of those sources within their control where Plaintiffs reasonably believe responsive information may exist.

7.      Plaintiffs' responses and objections are submitted without prejudice to Plaintiffs' right to produce evidence of any subsequently discovered fact. Plaintiffs accordingly reserve the right to provide further responses and objections as she ascertains additional facts.

8.      Plaintiffs reserve all objections or other questions as to the competency, relevancy, materiality, privilege, or admissibility as evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever of Plaintiffs' responses herein and any document or thing provided in response to Defendants' interrogatories.

## GENERAL OBJECTIONS

Plaintiffs assert the following General Objections, which apply to each and every separately-numbered interrogatory below as if set forth fully therein. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.      Plaintiffs object to these interrogatories to the extent that they seek information or documents that are protected from discovery by the attorney-client privilege, the work product doctrine, joint defense privilege or any other applicable privilege. By making a response to any such interrogatory, Plaintiffs do not waive the attorney-client privilege, work-product doctrine, joint defense privilege and/or any other applicable privilege as to that interrogatory or any future

discovery request. To the extent that Plaintiffs inadvertently disclose any information that, in whole or in part, contains information that is protected by the attorney-client privilege, work-product doctrine, joint defense privilege and/or any other applicable privilege, such disclosure does not waive the protection of that privilege.

2.    Plaintiffs object to these interrogatories to the extent that they seek documents or information not required to be provided under the Federal Rules of Civil Procedure.

3.    Plaintiffs object to each and every "instruction" and "definition and guideline" to the extent that it purports to incorporate any meaning for a word or phrase other than its legal, usual and/or customary meaning.

4.    Plaintiffs object to the definition of "you," and all forms thereof, as overly broad resulting in interrogatories which would impose an unreasonable burden and expense upon Plaintiffs well beyond permissible discovery and which otherwise lack proportionality required by the Federal Rules of Civil Procedure.

5.    Plaintiffs object to each and every request, instruction and definition to the extent that it seeks to require Plaintiffs to do more than use reasonable diligence to locate responsive documents based on an examination of those files that reasonably may be expected to yield responsive documents and an inquiry of those persons who reasonably may be expected to possess responsive documents.

6.    Plaintiffs object to these interrogatories to the extent they seek production of information for an undefined period of time.

7.    Plaintiffs object to these interrogatories to the extent that Defendants, collectively or individually, are in possession, custody or control of the information sought, or the information sought can be had from some other source that is more convenient, less burdensome

and/or less expensive.

## INTERROGATORIES

1.    With regard to each of the Seven Alleged Recipients, did that individual himself/herself communicate to you that Daniel stated (orally or in writing) to that individual that you were stealing your father's money and/or that you were keeping family members/friends from your father and, if so, when, who was present/copied, and what was the substance of each such communication?

## ANSWER:

**Plaintiffs object to this interrogatory in that it purports to be a single interrogatory but is multiple interrogatories. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity whether created by statute or common law. Plaintiffs object to this interrogatory to the extent that "that individual himself/herself" is vague and ambiguous. Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs state that they learned about Defendants' defamatory statements from the several of the individuals themselves, while Plaintiffs learned of other defamatory statements through various non-parties. Specifically, Plaintiffs learned about Daniel's defamatory statements to Mr. Morrison and Mr. Casey made on or about March 31, 2022 from Christopher M. Placitella, Esq. Mr. Casey and Mr. Morrison informed Mr. Placitella of Daniel's March 31, 2022 defamatory statements regarding Carl's stealing all of Arno's money and Carl's denial of/blocking access to his father. Mr. Placitella subsequently informed Carl of the Defendants' defamatory statements on April 1, 2022.**

**Mr. Placitella had been in frequent communication with Mr. Casey (who represented Mr. Morrison, Arno's landlord) concerning a class action lawsuit filed by Arno Mayer against Mr. Morrison. Mr. Placitella generously offered to help resolve the issues between Arno Mayer and Mr. Morrison because Mr. Placitella and Carl Mayer had a long-standing personal and professional relationship dating back forty (40) years. Mr. Placitella advised Carl Mayer that he would speak with Mr. Casey on March 31, 2022. Carl Mayer advised Mr. Placitella that he would be unavailable that day because he was undergoing heart surgery at New York Presbyterian Hospital.**

**Carl Mayer spoke to Mr. Placitella on April 1, 2022, to discuss the conversation Mr. Placitella had with Mr. Casey the day prior. When Carl Mayer spoke to Mr. Placitella, he said to Carl in sum and substance, "Casey said that your relatives, specifically your brother Daniel, and cousins Jackie and Frank told Casey and Morrison that 'Arno could not pay his rent because I—Carl Mayer—stole all of Arno's money.'" Carl Mayer was shocked to learn of these defamatory statements because Daniel (with supporting certifications from Jacqueline Burger and Frank Glaser) had unsuccessfully litigated these issues before the**

Superior Court of New Jersey culminating in a dismissal with prejudice in June 2021. The Superior Court of New Jersey, Appellate Division, dismissed Daniel's appeal with prejudice in December 2021.

The Princeton Police Department similarly found no evidence to support Daniel Mayer's false allegations of "elder abuse" and the indictable offense of endangering the welfare of the elderly or disabled under N.J.S.A. 2C:24-8. Defendants' complaints to the New Jersey Division of Family Services and the Mercer County Board of Social Services were similarly never acted upon due to a lack of evidence.

Plaintiffs learned of Daniel's March 24, 2022 and June 24, 2022 defamatory statements made to Pamela Long from Ms. Long directly on or about the time Daniel made the false statements to Ms. Long.

Plaintiffs learned of Daniel's May 3, 2022 defamatory statement (made via email) from Ms. Zemble, who was copied with several other recipients on the correspondence. Plaintiffs also learned directly of Daniel's May 3, 2022 defamatory statement because Carl Mayer was a recipient of the email. In the May 3, 2022 email sent to Carl, his wife Ms. Zemble, and to several persons including Michele Burger and Jacqueline Burger, Daniel falsely stated that Carl "blocked [Arno's] access to [Daniel], his sister, and my kids." In the May 3, 2022 email, Daniel accuses Carl of manipulating Arno, a crime under N.J.S.A. 2C:24-8 (endangering the welfare of the elderly or disabled). The May 3, 2022 email repeated and related back to Daniel's prior false statements on or about March 31, 2022 that accused Carl of stealing his father Arno's money and blocking all access to Arno. Ms. Zemble also informed Plaintiffs of Daniel's defamatory statements in August 2022.

Plaintiffs learned of Daniel's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

      2.     Identify by name, date, manner (i.e. written or oral), and others present/copied, those individuals who advised you that that the purported statements alleged in the FAC were made by Daniel to the Seven Alleged Recipients, including the substance of what you were purportedly advised by each.

**ANSWER:**

**<u>See</u> Response to Interrogatory No. 1.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

3.      Set forth all facts upon which you based the allegations in the FAC that each of the statements alleged to have been made by Daniel was made to each of the Seven Alleged Recipients at any time from March 31, 2022 through the date the FAC was filed.

**<u>ANSWER:</u>**

**<u>See</u> Response to Interrogatory No. 1.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

4.      If you contend that the statements (regarding you stealing your father's money and/or you keeping family members/friends from your father) were allegedly made by Daniel to any of the Seven Alleged Recipients after the FAC was filed, set forth, as to each individual separately, all facts upon which you base that contention, including the date, manner (i.e. written or oral) and substance of any such alleged statement(s), who was present/copied, and how you became aware of each.

**<u>ANSWER:</u>**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. At this time, Plaintiffs are not aware of any additional defamatory statements made by Daniel after Plaintiffs filed the Amended Complaint on July 12, 2023.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

5.      Set forth all facts upon which you base your contention that each of the statements was made on the date(s) alleged in the FAC (i.e., to Jack Morrison on 3/31/22; Robert Casey, Esq. on 3/31/22; Karen Zemble on 5/3/22; David Felsenthal, Esq. during the week of 5/18/22-5/26/22; Jason Brown, Esq. during the week of 5/18/22-5/26/22; Dr. Sean Naini during the week of 5/18/22-5/26/22; and Pamela Long during the week of 6/24/22).

**<u>ANSWER:</u>**

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Without waiving the foregoing general or specific objections, <u>see</u> Response to Interrogatory No. 1.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

6.     Describe in detail, including the date, those present/copied, and the substance of, all written and oral communications you have had with each of the Seven Alleged Recipients regarding Daniel's purported statements from March 31, 2022 to present that you stole money from your father and/or were keeping family members/friends away from your father.

<u>ANSWER:</u>

Plaintiffs object to this interrogatory to the extent it seeks the substance of "all written and oral communications" and is overly broad, unduly burdensome and harassing. Plaintiffs object to this interrogatory to the extent it seeks information subject to the attorney client privilege, the spousal/marital communications privilege, work product doctrine or similar statutory or common law privilege.

Notwithstanding the foregoing specific and general objections, <u>see</u> Response to Interrogatory No. 1. Plaintiffs further state that they had conversations with Pamela Long about Defendants' defamatory statements on the following dates:

1. <u>March 14, 2022</u> (Pamela Long forwarding Daniel emails to Plaintiffs).
2. <u>June 16, 2024</u> (Pamela Long forwarding Daniel emails to Plaintiffs).
3. <u>June 22, 2024</u> (Plaintiffs thanking Pamela Long for providing declaration).
4. <u>June 24, 2024</u> (Pamela Long responding to Plaintiffs thanking Pamela Long for providing declaration).
5. <u>July 20, 2024</u> (Plaintiffs discussing subpoena compliance and records for case).
6. <u>July 22, 2024</u> (Pamela Long confirming to Plaintiffs she does not possess any documents beyond those included in her certification).

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

7.     Describe in detail, including the date, those present/copied, and the substance of all written and oral communications you have had with Christopher M. Placitella, Esq. regarding Daniel's purported statements from March 31, 2022 to present that you stole money from your father and/or were keeping family members/friends away from your father.

**ANSWER:**

**Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this interrogatory to the extent it seeks the substance of "all written and oral communications" and is overly broad, unduly burdensome and harassing. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, work product doctrine or similar statutory, joint defense privilege, common interest privilege or common law privilege.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with Christopher M. Placitella, Esq. about Defendants' defamatory statements on the following dates:**

1. **March 30, 2022 (Mr. Placitella and Plaintiffs discussing Arno Mayer landlord case and Mr. Placitella providing legal advice).**
2. **March 31, 2022 (Mr. Placitella informing Plaintiffs that he spoke to Mr. Casey and providing legal advice).**
3. **April 3, 2022 (Plaintiffs discussing Defendants' defamatory statements with Mr. Placitella and providing legal advice).**
4. **July 17, 2022 – July 20, 2022 (Plaintiffs discussing Arno Mayer case legal advice with Mr. Placitella)**
5. **June 18, 2024 (Plaintiffs exchange emails with Mr. Placitella concerning this case).**
6. **June 19, 2024 (Plaintiffs forwarding March 30, 2022 email to Mr. Casey about Defendants' defamatory comments, including Plaintiffs' recollection from call with Mr. Placitella that Casey told Mr. Placitella Defendants said "Carl stole all of Arno's money").**
7. **June 20, 2024 (Plaintiffs and Mr. Placitella discussing case over telephone).**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

8.      Describe in detail, including the date, those present/copied, and the substance of, all written and oral communications you have had with any other individuals (other than privileged communications with counsel representing you) regarding Daniel's purported statements from March 31, 2022 to present that you stole money from your father and/or were keeping family members/friends away from your father.

**ANSWER:**

**Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral**

communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, spousal/marital communications privilege, work product doctrine or similar statutory or common law privilege.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with other individuals about Defendants' defamatory statements on the following dates:

On April 8, 2022, Plaintiffs emailed Mr. Casey about Defendants' defamatory statements, including that Mr. Casey "told Mr. Placitella that [Defendants] stated [Carl] stole Arno's money." Shortly after, Mr. Casey confirmed that he spoke to Mr. Placitella about "helping" Arno. Mr. Casey did not mention or deny that Defendants defamed Plaintiffs.

On May 25, 2022, Plaintiffs emailed Eliot Spitzer about Defendants' defamatory statements to Mr. Spitzer, William Taylor, Jason Brown, Esq. and David Felsenthal, Esq. Mr. Spitzer responded by email on May 26, 2022 and copied Jason Brown, Esq., William Taylor, David Felsenthal, Esq., Defendant Jacqueline Burger, Esq., and Defendant Daniel Mayer. Plaintiffs responded via email only to Mr. Spitzer on May 27, 2022.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

## **CERTIFICATION**

I hereby certify that the foregoing answers to Interrogatories are true. I further certify that in response to the foregoing Interrogatories, I have furnished all information available to me and to my agents, employees and attorneys. As to those answers that are not within my personal knowledge, I have certified that I have provided the name and address of any person from whom such information was received, or, where the source of such information is documentary, a full description of the Document or Written Communication, including its location.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____

CARL J. MAYER, ESQ., Individually, and
on behalf of Mayer Law Group, LLC

Dated: ___9/21/2024____, 2024

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served, or caused to be served, a true and correct copy of the foregoing Plaintiffs' Responses and Objections to the Defendant's Interrogatories, by email upon the following:

**GIBBONS P.C.**
Thomas J. Cafferty, Esq.
Nomi Lowy, Esq.
One Gateway Center
Newark, NJ 07102-5310
Tel: (973) 596-4863
Fax: (973) 639-6267
*Attorneys for Defendant*
*Daniel P. Mayer*

**KENT & McBRIDE, P.C.**
Diana R. Brocco, Esq.
Kathryn V. McCallion, Esq.
1040 Kings Highway North, Suite 600
Cherry Hill, NJ 08034
Tel: (856) 667-3113
*Attorneys for Defendants*
*Jacqueline Burger, Esq. and Frank Glaser, Esq.*

**FOX ROTHSCHILD LLP**

Dated:   September 24, 2024          By:   s/ Jeffrey M. Pollock
_____
Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
*Attorneys for Plaintiffs*

# EXHIBIT B

Redacted Email Messages Carl Mayer and Christopher Placitella, Esq.
(Bates Nos. 000001-20; 40-41; 44-47)

Message

**From:**  Chris Placitella [cplacitella@cprlaw.com]
**Sent:**  4/3/2022 10:51:04 PM
**To:**  Carl J. Mayer Esq [cyberesquire@aol.com]
**Subject:**

Get Outlook for iOS

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Sunday, April 3, 2022 5:50:16 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:** Re: Mayer v Witherspoon Urban Renewal Assoc, et al DOCKET# MER-L-1891-21



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

-----Original Message-----
From: Chris Placitella <cplacitella@cprlaw.com>

To: Carl J. Mayer Esq <cyberesquire@aol.com>
Sent: Thu, Mar 31, 2022 10:53 am
Subject: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Get Outlook for iOS

**From:** Chris Placitella <cplacitella@cprlaw.com>
**Sent:** Wednesday, March 30, 2022 9:29:22 PM
**To:** Carl J. Mayer Esq <cyberesquire@aol.com>
**Subject:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Get Outlook for iOS

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Wednesday, March 30, 2022 9:16:37 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

    This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

CarlMayer0000002

-----Original Message-----
From: Robert E. Lytle <RLytle@szaferman.com>
To: cyberesquire@aol.com <cyberesquire@aol.com>
Sent: Sun, Feb 27, 2022 12:07 pm
Subject: FW: Mayer v Witherspoon Urban Renewal Assoc, et al DOCKET# MER-L-1891-21

Carl,

I saw your email requesting Bob Stevens' contact information.  His cell phone number is 609-540-9836.

As we discussed, I have filed a letter with the court in connection with the recent notice that was sent pursuant to R. 1:13-7 (see attached).  In addition, I filed a motion to change the track assignment for the case (see attached).  It was originally assigned to Track 1 (which had a short 150 day discovery period).  I requested that it be changed to Track 4.  That motion is returnable on March 18th.

Yesterday, your dad's landlord filed a summary dispossess action seeking his eviction for non-payment of rent (see attached).  A copy of the complaint is attached.  It's very important that the action be addressed in a timely manner by new counsel.

Please let me know if you have any questions.

Bob

**Robert E. Lytle, Esq.**
Szaferman Lakind
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
Office:  609-275-0400
Cell:   609-468-7850
Fax:    609-275-4511
Email:  rlytle@szaferman.com



**From:** Robert F. Casey <rfcasey@Lenoxlaw.com>
**Sent:** Saturday, February 26, 2022 11:46 AM
**To:** Gwyneth A. Haynes-Rodman <GHaynesRodman@szaferman.com>; mmcandrew@okllp.com
**Cc:** Robert E. Lytle <RLytle@szaferman.com>
**Subject:** RE: Mayer v Witherspoon Urban Renewal Assoc, et al DOCKET# MER-L-1891-21

**EXTERNAL MESSAGE**

Bob Lytle.

See attached summary dispossess action filed against your client, Arno Mayer.

I don't have a docket number yet as it was filed today.

Thanks.  Bob C.

**Robert F. Casey, Esq.**
Lenox, Socey, Formidoni, Giordano, Lang,
Carrigg & Casey, LLC
136 Franklin Corner Road, B2
Lawrenceville, New Jersey 08648

CarlMayer0000003

p.(609)896-2000 x 123
f.(609)895-1693
rfcasey@lenoxlaw.com
www.lenoxlaw.com
Attorney ID # 024712004

Please make sure to copy my legal assistant Stella Sochalski (ssochalski@lenoxlaw.com) on all of your email communications.

This email transmission and any accompanying material may contain confidential and/or privileged information from Robert F. Casey, P.C. or the Lenox Law Firm. This communication is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521 and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, copying or use of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, and then delete it. Thank you

**From:** Gwyneth A. Haynes-Rodman <GHaynesRodman@szaferman.com>
**Sent:** Friday, February 25, 2022 12:39 PM
**To:** Robert F. Casey <rfcasey@Lenoxlaw.com>; mmcandrew@okllp.com
**Cc:** Robert E. Lytle <RLytle@szaferman.com>
**Subject:** Mayer v Witherspoon Urban Renewal Assoc, et al DOCKET# MER-L-1891-21

Good Afternoon Counsel,

At the direction of Mr. Lytle, please see attached for your files a filed copy of Plaintiff's Notice of Motion to Change Track Assignment. A hard copy was mailed to you as well.

Thank you.

Gwyneth Haynes-Rodman
Paralegal
**Szaferman, Lakind, Blumstein & Blader, P.C.**
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
Direct: (609) 779-6546
Office: (609) 275-0400 x237
Fax: (609) 557-0887
GHaynesRodman@szaferman.com

 

**NOTICE:  This email (including any attachments) is covered by the Electronic Communications Privacy Act, 18 USC Sections 2510-2521, is confidential and may be legally privileged. If you are not the intended recipient, you are hereby notified that any retention, dissemination, distribution, or copying of this communication is strictly prohibited. Please reply to the sender if you have received this email in error, then delete it.  Thank you.**

CarlMayer0000004

Message

_____

**From:**     Chris Placitella [cplacitella@cprlaw.com]
**Sent:**     7/20/2022 7:33:06 PM
**To:**       Carl J. Mayer Esq [cyberesquire@aol.com]
**CC:**       Chris Placitella [cplacitella@cprlaw.com]
**Subject:**  ████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████

Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

New Jersey Certified Civil Trial Attorney pursuant to Rule 1:39-5(a)

"The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury."

Marbury v. Madison (1803) (John Marshall)


*Please be advised that CPR is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents electronically. Receipt of and response to physical mailings may be delayed. Stay safe and thank you in advance for your cooperation.*

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (732) 747-9003 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Tuesday, July 19, 2022 10:00 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:** Re: ████████████████████████████

████████████████████████████████████████
████████████████████████████████████████



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

\*\*\*\*\*\*\*

    This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

-----Original Message-----
From: Chris Placitella <cplacitella@cprlaw.com>
To: Carl J. Mayer Esq <cyberesquire@aol.com>
Sent: Tue, Jul 19, 2022 8:56 pm

Get Outlook for iOS

From: Chris Placitella <cplacitella@cprlaw.com>
Sent: Tuesday, July 19, 2022 11:44 AM
To: Carl J. Mayer Esq <cyberesquire@aol.com>
Cc: Chris Placitella <cplacitella@cprlaw.com>
Subject: RE:



CarlMayer0000006



Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

CarlMayer0000007



Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

New Jersey Certified Civil Trial Attorney pursuant to Rule 1:39-5(a)

"The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury."

Marbury v. Madison (1803) (John Marshall)

*Please be advised that CPR is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents electronically.  Receipt of and response to physical mailings may be delayed.  Stay safe and thank you in advance for your cooperation.*

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use,

CarlMayer0000008

distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (732) 747-9003 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Sunday, July 17, 2022 7:17 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>; Carl J. Mayer Esq <cyberesquire@aol.com>
**Subject:** 



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

This message and any attachment are confidential and may be privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

CarlMayer0000009

Message

**From:**     Chris Placitella [cplacitella@cprlaw.com]
**Sent:**      7/20/2022 12:56:59 AM
**To:**        Carl J. Mayer Esq [cyberesquire@aol.com]
**Subject:**

Get Outlook for iOS

**From:** Chris Placitella <cplacitella@cprlaw.com>
**Sent:** Tuesday, July 19, 2022 11:44 AM
**To:** Carl J. Mayer Esq <cyberesquire@aol.com>
**Cc:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:** RE:





Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com



CarlMayer0000011

Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

New Jersey Certified Civil Trial Attorney pursuant to Rule 1:39-5(a)

"The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury."

Marbury v. Madison (1803) (John Marshall)

*Please be advised that CPR is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents electronically. Receipt of and response to physical mailings may be delayed. Stay safe and thank you in advance for your cooperation.*

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (732) 747-9003 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Sunday, July 17, 2022 7:17 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>; Carl J. Mayer Esq <cyberesquire@aol.com>
**Subject:** LETTER TO CASEY AND TALKING POINTS ATTACHED



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

CarlMayer0000013

Message

| | |
|---|---|
| **From:** | Pamela LONG [phlong531@gmail.com] |
| **Sent:** | 7/22/2024 6:46:20 PM |
| **To:** | CYBERESQUIRE@AOL.COM [cyberesquire@aol.com] |
| **Subject:** | documents |

Dear Carl:

I do not have any documents on my computer relating to the case.  You have the original (and only) copy of the subpoena I was given at my apartment a couple of weeks ago.

Best,

Pamela

CarlMayer0000014

Message

| | |
|---|---|
| **From:** | cyberesquire@aol.com [cyberesquire@aol.com] |
| **Sent:** | 6/19/2024 10:01:36 PM |
| **To:** | Chris Placitella [cplacitella@cprlaw.com]; Carl Mayer [cyberesquire@aol.com] |
| **CC:** | cyberesquire@aol.com |
| **Subject:** | Fw: [EXT] Fw: your remarks//URGENT EMAIL SHOWING DEFENDANTS DEFAMED ME TO CASEY.CASEY 4.08.2022 EMAIL TO ME DOES NOT DENY MY VERBATIM RECOLLECTION OF WHAT CHRIS SAID.. |

CHRIS:  MY NOTES OF  MY CONVERSATION WITH YOU WERE IN THE EMAIL I SENT TO CASEY ON 04/08/2022. SEE BELOW.  CASEY NEVER WRITES BACK DENYING ANY OF THIS.  PLEASE CALL WITH QUESTIONS AT 609-921-0253.  ITS DUE TOMMORROW. SORRY ABOUT THIS.

Sincerely,

Carl J. Mayer, Esq.
https://en.wikipedia.org/wiki/Carl_J._Mayer
THE NATIONAL TRIAL LAWYERS, TOP 100, 2023
NATIONAL ASSOCIATION OF DISTINGUISHED COUNSEL, TOP ONE PERCENT, 2023

MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
212-382-4686 (P)
212-382-4687 (F)

174 Nassau Street, Suite 414
Princeton NJ 08542
609-921-0253 (P)
609-921-6964 (F)

20071 Warwick Lane
Quinby, VA 23423
757-442-4191 (P)
212-382-4687 (F)

*******

    This message and any attachment are confidential and may be privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

CarlMayer0000015

CarlMayer0000016



CarlMayer0000017

CarlMayer0000018



CarlMayer0000019





CarlMayer0000020

Message

| | |
|---|---|
| **From:** | cyberesquire@aol.com [cyberesquire@aol.com] |
| **Sent:** | 4/3/2022 9:50:16 PM |
| **To:** | cplacitella@cprlaw.com |
| **Subject:** | ████████████████████████████ |



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

-----Original Message-----
From: Chris Placitella <cplacitella@cprlaw.com>
To: Carl J. Mayer Esq <cyberesquire@aol.com>
Sent: Thu, Mar 31, 2022 10:53 am
Subject: Re: ████████████████████████████

████████████████████

Get Outlook for iOS

From: Chris Placitella <cplacitella@cprlaw.com>
Sent: Wednesday, March 30, 2022 9:29:22 PM
To: Carl J. Mayer Esq <cyberesquire@aol.com>
Subject: ████████████████████████████

CarlMayer0000040



Get Outlook for iOS

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Wednesday, March 30, 2022 9:16:37 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:**



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

\*\*\*\*\*\*\*

This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.

-----Original Message-----
From: Robert E. Lytle <RLytle@szaferman.com>
To: cyberesquire@aol.com <cyberesquire@aol.com>
Sent: Sun, Feb 27, 2022 12:07 pm
Subject:

Message
_____

**From:**      cyberesquire@aol.com [cyberesquire@aol.com]
**Sent:**      7/20/2022 1:59:46 AM
**To:**        cplacitella@cprlaw.com
**Subject:**   Re: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

         *******

    This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or
attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or
retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product
privilege that may be available to protect confidentiality.


-----Original Message-----
From: Chris Placitella <cplacitella@cprlaw.com>
To: Carl J. Mayer Esq <cyberesquire@aol.com>
Sent: Tue, Jul 19, 2022 8:56 pm
Subject: Re: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓

Get Outlook for iOS
_____
**From:** Chris Placitella <cplacitella@cprlaw.com>
**Sent:** Tuesday, July 19, 2022 11:44 AM
**To:** Carl J. Mayer Esq <cyberesquire@aol.com>
**Cc:** Chris Placitella <cplacitella@cprlaw.com>
**Subject:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓



Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com



Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

New Jersey Certified Civil Trial Attorney pursuant to Rule 1:39-5(a)

"The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury."

Marbury v. Madison (1803) (John Marshall)

*Please be advised that CPR is complying with CDC guidelines and operating as a virtual office available via phone and e-mail due to the coronavirus crisis. As you are able, please forward correspondence and documents*

CarlMayer0000046

*electronically. Receipt of and response to physical mailings may be delayed. Stay safe and thank you in advance for your cooperation.*

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (732) 747-9003 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Sunday, July 17, 2022 7:17 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>; Carl J. Mayer Esq <cyberesquire@aol.com>
**Subject:** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



Carl J. Mayer, Esq.
MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
DIRECT: 212-382-4686
FAX: 212-382-4687

*******

This message and any attachment are confidential and may be
privileged or otherwise protected from disclosure. If you are not the
intended recipient, please telephone or email the sender and delete this
message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

CarlMayer0000047

# EXHIBIT C

May 3, 2022 Email from Daniel to Carl

From: **Daniel Mayer** <danielpmayer@gmail.com>
Date: Tue, May 3, 2022 at 9:32 PM
Subject: How is it that you can live with yourself?
To: Carl Mayer <cyberesquire@gmail.com>
Cc: Jacqueline Burger <jackieburger56@gmail.com>, Karen Zemble <kzemble@gmail.com>, Michele Burger <micheleburger11@gmail.com>, Suzanne Burger <suzanne.burger3@gmail.com>


Carl -

Your taking dad to DC was reckless and completely disgusting. Dad would  have 1000 percent objected to it. There are so many levels on which what you did was just all about you and nothing else. (1) A couple of months ago you claimed you were concerned about dad's health and therefore called the police when I visited him insisting I would give him COVID, however, you take him unmasked down to DC to receive a reward he would have rejected had he been cogent (you better pray he does not get COVID). (2) He detests being

DANIELPROD#1_00011

associated with the US military and yet you stick a World War II veterans cap on him and let your wife post that on Facebook. (3) He never wanted to go to a Richie Boys reunion when he was cogent so clearly he would have never accepted this reward.  (4) General Milley's speech about US exceptionalism would have made him throw up and you know he would have walked out on it. (5) He did not like Elie Wiesel and would not take any award that was in his name. (6) Karen's posting this all on Facebook would have offended him to the core.

Leaving aside DC, he would have also detested that you recently held a press conference where you again put a WWII veterans cap on him. How dare you use him as your pawn and claim he will be homeless while you are living down the road in <u>his</u> 7 bedroom house!

Clearly, at the end of the day, it is not about what dad stood for, what he valued, or what he wanted.  If it was, you wouldn't have blocked his access to me, his sister, and my kids. And you would not have taken him to DC to claim an award he would have rejected. So what is it about? Just you? Your wife? Your kids?

Daniel

DANIELPROD#1_00012

# EXHIBIT D

Data Collections and Forensic Rate Sheet of Consilio

**EXHIBIT A: Data Collections and Forensics Rate Sheet**

**Data Collection & Forensic Services**

| Service Description | Unit | Rate |
|---|---|---|
| **Media Storage**<br>Secure storage of containers/media, and maintenance of chain of custody for source client media. | Per Media, Per Month | $25 |
| **Per Hour**<br>Computer forensic rate for collections services. | Per Hour | $300 |

| Service Description | Unit | Rate |
|---|---|---|
| **Project Management and Related Services** | | |
| **Project Management Support and Coordination for Forensic Services/Tasks**<br>Coordination and scheduling of all collection activities. | Per Hour | $175 |
| **Travel Time** | Per Hour | $150 |
| **Other Media Types** | | |
| **Target Media**<br>Out-of-pocket expenses and target media will be billed at actual amounts incurred. | Per Device | At Cost |

| Service Description | Unit | Rate |
|---|---|---|
| **Professional Hourly Rates** | | |
| **Manager** | Per Hour | $325 |
| **Director** | Per Hour | $375 |
| **Managing Director** | Per Hour | $400 |
| **Testimony Rates** | | |
| **Oral/Written Testimony** | Per Hour | $500 |

**EXHIBIT B: Data Services and Project Management Rate Sheet**

Each matter will incur a minimum fee of $10,000 for U.S. matters or $5,000 for non-U.S. matters.

| Single-Tier Processing Service Description (Option 1) | Unit | Rate |
|---|---|---|
| **Data Processing and Upload** *includes:*<br><br>• Data receipt of Ingested Data, metadata extraction, child and embedded object extraction, text extraction, hash value creation, OCR of select image file types, file type filtering, deNIST and duplicate removal.<br>• Delivery of standard processing reports including exception reports.<br>• Data export to standard load file and loading data into the review platform. | Per GB* | $85 |
| **Optional Encryption at Rest**<br>When Consilio processes data, it will process into a database that has been configured on a storage unit that utilizes encryption at rest.<br><br>*\*Billed against Ingested Data volume* | Per GB* | $15 |

| Two-Tier Processing Service Description (Option 2) | Unit | Rate |
|---|---|---|
| *Data Processing includes:*<br>• Data receipt of Ingested Data, metadata extraction, child and embedded object extraction, text extraction, hash-value creation, OCR of select image file types, file type filtering, deNIST and duplicate removal.<br>• Delivery of standard processing reports including exception reports. | Per GB* | $40 |
| **Optional Encryption at Rest**<br>When Consilio processes data, it will process into a database that has been configured on a storage unit that utilizes encryption at rest.<br><br>*\*Billed against Ingested Data volume* | Per GB* | $15 |
| *Data Upload includes:*<br>• Data export to standard load file and loading data into the review platform.<br><br>*^Billed against the Active Data volume* | Per GB* | $85 |

| Data Mapping and Upload Service Description | Unit | Rate |
|---|---|---|
| **Data Mapping and Upload Service**<br><br>*Rate includes:*<br>• Receipt of third party productions or processed data, staging for upload into review software, mapping of fields from DAT/Load Files into review software database, upload and QC assurance of upload.<br>• Transformations or alteration of data | Per Hour | $150 |

**EXHIBIT B: Data Services and Project Management Rate Sheet**

| Hourly Services | Unit | Rate |
|---|---|---|
| **Project Management**<br><br>Coordinates and oversees all project deliverables and tasks, objectives, and progress among the Consilio and Client project teams.<br><br>Project Management time is incurred for day-to-day project management tasks of an ongoing project, such as:<br>• Coordination of collection, processing, production and hosting tasks.<br>• Preparing and providing regular status reports, cost estimates and billing.<br>• Any tasks the client/outside counsel can do themselves (creating saved searches, printing documents to PDF, etc.).<br>• Custom reporting.<br>• Project Closure, including data exports for deletion. | Per Hour | $185 |
| **Data Technician**<br><br>Technical time is incurred for tasks executed by the Data Operations team that are above and beyond scope, such as:<br>• Data selection from collected/received data.<br>• Exception handling.<br>• Metadata mapping and overlays.<br>• Transforming or alterations to third-party or opposing party production or processed data.<br>• Custom workflows, metadata exports or report creation.<br>• OCR of file types not included in processing standard.<br>• Nonstandard client requests such as corrupted file repair, encrypted file cracking, data deletion/destruction or final export at Data Disposition.<br>• Data deletion | Per Hour | $150 |

| Hosting Service Description | Unit | Rate |
|---|---|---|
| **Relativity User Access**<br>Pass-through charge to Relativity.<br><br>*To be billed for all external Relativity users and reviewers* | Per Seat Per Month | $65 |
| **Active Data Hosting**<br><br>**Optional Encryption at Rest**<br>When Consilio hosts data that is encrypted at rest, the primary hosting database will be encrypted at rest, as will the file variants stored on the workspace | Per GB/ Per Month | $11 |

**EXHIBIT B: Data Services and Project Management Rate Sheet**

| | | |
|---|---|---|
| **Inactive Data or Archived Data Storage** | Per GB/ Per Month | $5 |
| **Database Restoration of Archived Workspace to Active**<br><br>*Minimum eight (8) hours billable time.* | Per Hour | $150 |

| Production and Production Export Service Description | Unit | Rate |
|---|---|---|
| **Standard Production Rates** | | |
| **Image Production:** Includes ESI Conversion to TIFF Image, Branding and Endorsement, Creation of Load Files | Per Page | $0.03 |
| **Native File Production:** Includes Native file export for production or export, bates numbering and endorsement, creation of load files<br><br>*A database export is considered a native file production/export* | Per File | $0.05 |

| | | |
|---|---|---|
| **Premium Production Imaging Services**<br>• Searchable PDF files.<br>• Color images (JPEG or other).<br>• Multi-page text files with pagination.<br>• Single-page text files. | Per Page (Additional) | $0.01 |
| **Minimum Production Charge**<br><br>Fee will apply only when total standard cost of production does not exceed $450, whether native, Image, or both. | Per Production | $450 |
| **Emergency Production Charge**<br><br>Fee will apply only for productions requested in less than 24-hour turnaround time, and will be irrespective of any other production fees | Per Production | $1,000 |
| **Production Media** | | |
| **DVD** | Per DVD | $3 |
| **16 GB Thumb Drive** | Per Drive | $20 |
| **32 GB Thumb Drive** | Per Drive | $40 |
| **1 TB USB Hard Drive** | Per Hard Drive | $250 |
| **1 TB USB Padlock Drive** | Per Padlock Drive | $350 |

**EXHIBIT B: Data Services and Project Management Rate Sheet**

| | | |
|---|---|---|
| **Media Storage**<br><br>Securely store and maintain chain of custody for source Client media from collections or provided by the client. | Per Piece of Media | $25 |
| **Media Return Fee**<br><br>Cost to return client media or deliver production media. | Per Device | At Cost |

| | | |
|---|---|---|
| **Optional Redaction Automation** | | |
| **Automated Redactions Service, Powered by Mylili Blackout**<br><br>Service* includes:<br>• Client use of Mylili software<br><br>Service will incur a minimum charge of $2,500<br><br>Note that expert consulting and best practice guidance will be billed at Project Management rates | Per Page Redacted By Software(TIFF) | $0.35 |
| | Per Redaction Redacted By Software (Native) | $0.09 |

| | |
|---|---|
| **Machine Translation** | |
| Pricing available on request | |

EXHIBIT C: Data Analytics Rate Sheet

| Data Analytics Services | Unit | Rate |
|---|---|---|
| **Analytics Using Brainspace Analytics Engine**<br><br>*Rate includes:*<br><br>• Analytics attribute generation for Conceptual Clusters, Email Threading and Textual Near Duplicate Identification which are passed back into Relativity.<br><br>• Enables Consilio to run its Smart Assign application, which optimally sort/sequences documents for review to promote review efficiency and coding consistency. Consilio's Smart Assign may run optionally with a Continuous Active Learning protocol.<br><br>**Optional Client Direct Access to Brainspace***<br><br>Enables client to log into the Brainspace user interface hosted within Consilio's data centers to run conceptual searching, cluster visualization, communication explorer visualization, dashboards, etc.<br><br>*\*Requires purchase of Analytics Using Brainspace Analytics Engine.* | Per Doc/ Per Month | $0.008<br><br><br><br><br><br>$0.002 extra |
| **Analytics Using CAAT/Relativity Analytics**<br><br>*Rate includes:*<br><br>• Analytics attribute generation for foreign language identification, keyword expansion and Relativity-assisted review/categorization within Relativity. Also allows client to perform Conceptual Searching. | Per GB | $20 |
| **Predictive Coding** | | |
| **Predictive Coding Service**<br><br>*Rate includes:*<br><br>• License to use predictive coding software either Brainspace or Backspace.<br><br>• Certified Consilio technical consultant resources to supervise experience and guide client through end-to-end predictive coding workflows.<br><br>• Creation of a prevalence test and random/control set for full statistical comparison and guided iterative cycles to stabilize the model.<br><br>• Includes consulting after each training cycle on next steps to reach stability or proceed with targeted review.<br><br>• Modeling for up to five discrete decision points in the software (e.g. Issue A, Issue B)<br><br>• Up to 20 technical consulting hours | Per Doc | $0.03 |

**EXHIBIT C: Data Analytics Rate Sheet**

| Hourly Services | | |
|---|---|---|
| **Data Analytics Specialist Support Activities**<br><br>Consilio's Data Analytics Specialist can support clients through a number of activities, including:<br><br>• Investigative services such as Population Overview, Irrelevant Document Category Identification, Communication Analysis, Data Validation & Gap Analysis, Key Document Identification, Immediate Case Assessment™ (ICA), etc.<br><br>• Review population identification that includes Search Term Application & Reporting, Statistical Sampling Validation of Search Terms, Categorization, etc.<br><br>• Review efficiency, accuracy and population reduction through Email Threading, Clustering, Textual Near Duplicate Identification, Smart Assign, etc.<br><br>• Training and consultation services including counsel consultation, support for use of self-service tools and presentations to outside counsel or government agencies. | Per Hour | $225 |

**EXHIBIT D: A la Carte Document Review (Hourly) Rate Sheet**

Consilio may provide Managed Document Review Services on an hourly basis. The primary components of such Services are included below. Change in the scope of these Services will be directed by the Client. Additional Services listed below are shown in the Additional Services Pricing Table.

**Document Review**

Managed Document Review Services typically includes the following activities. Specific scope is subject to Client's directive:

- Review Management and oversight.

- Review Team Staffing and onboarding.

- Review Database set up and Review Team database training.

- Review Team substantive training, typically up to 5% of Total Project Time.

- First-level review work.

- Consilio-led Quality Control process and review that typically includes up to 10% of review population subject to second-level review.

- Standard Reporting on overall Review Metrics (files coded Responsive, NR, Privileged, etc.).

- Activities to integrate with the legal team and corporate client.

- Providing saved searches containing the results of Consilio review work product for secondary review.

- All required equipment and facilities such as workstations, computers and internet access.

Additional Managed Document Review Services may also be provided at Client's directive:

- Weekend work or overtime hours (hours in a week over 40 per person as defined by a Monday through Friday work week). Consilio staffs projects so that reviewers do not work overtime or weekends, and such work will not be conducted without prior Client approval.

- Supplemental review workflows including: privilege log preparation, multiple reviews of documents for different matters/issues, redaction of information, bibliographic coding, activities involving typing, audio/video review or Bloomberg or other Chat review unless otherwise specifically agreed to.

- Documents reviewed in a language other than English.

- Additional Quality Control of the population subject to second-level review requested by Client or Counsel.

- Tasks provided which Client or Counsel may perform themselves:

  o Creating saved searches or tagging documents at the request of counsel.

  o Assistance with printing documents or exporting to PDF.

  o Management of Client or Counsel's review and workflow.

- Custom reporting requests.

- Assistance with claw-backs and reproductions.

- Review Downtime that is not a result of Consilio's system or workflow (i.e., Counsel wanting to suspend review but maintain the review team in house, third-party hosted database downtime).

**EXHIBIT D: A la Carte Document Review (Hourly) Rate Sheet**

| Managed Document Review – Tiered Hourly Pricing | | Unit | Tiered Rates | | |
|---|---|---|---|---|---|
| | | | Reviewer | Quality Control | Review Management |
| Washington, D.C. | [D.C. Barred] | Per Hour | $53 | $65 | $125 |
| | [Licensed or JD] | Per Hour | $49 | $65 | $125 |
| New York City | [Licensed] | Per Hour | $49 | $65 | $125 |
| Charlotte Minneapolis | [Licensed] | Per Hour | $43 | $55 | $125 |
| | [JD+] | Per Hour | $40 | $55 | $125 |
| Raleigh | [Licensed] | Per Hour | $42 | $55 | $125 |
| | [JD+] | Per Hour | $39 | $55 | $125 |
| St. Petersburg FL Miami | [Licensed] | Per Hour | $39 | $55 | $125 |
| | [JD+] | Per Hour | $37 | $55 | $125 |
| Houston Chicago | [Licensed] | Per Hour | $46 | $62 | $125 |
| | [JD+] | Per Hour | $44 | $62 | $125 |
| Dallas | [Licensed] | Per Hour | $46 | $62 | $125 |
| | [JD+] | Per Hour | $43 | $62 | $125 |
| Gurgaon India | | Per Hour | $24 | $24 | $45 |

**EXHIBIT D: A la Carte Document Review (Hourly) Rate Sheet**

| Additional Document Review Services | Unit | Rate |
|---|---|---|
| **Weekend Work / Overtime Work** | Per Hour | [The greater of 1.5 x hourly rate or DoL OT requirements] |
| **Additional Review Team Tasks**<br><br>These are tasks which Client or Counsel can perform themselves and not included in fixed pricing, including:<br><br>• Supplemental review workflows including: privilege log preparation, multiple reviews of documents for different matters/issues, redaction of information, bibliographic coding, activities involving typing, audio/video review or Bloomberg or other Chat review.<br><br>• Additional Review Training time beyond 5% of total project time.<br><br>• Additional Quality Control resulting in beyond 10% of the population subject to second level review requested by client or counsel.<br><br>• Custom reporting requests.<br><br>• Review Downtime: Any downtime where Consilio's review team is present and unable to review documents as a result of the non-Consilio review platform performance or delay in ability to review not caused by Consilio. | Per Hour | [Rate as set in above table] |
| **Foreign Language Review** | Per Hour | [Pricing for hourly services should be location and language specific] |
| **Additional Project Management Tasks**<br><br>These are tasks which Client or Counsel can perform themselves and not included in fixed pricing, including:<br><br>• Creating searches or tagging documents upon request.<br><br>• Assistance with printing documents or exporting to PDF.<br><br>• Management of Client or Counsel's review and workflow, including batching and reporting updates on Client or Counsel's review. | Per Hour | $225 |

# EXHIBIT E

Email Messages Between Christopher Placitella and Carl Produced in Unredacted
Form by Plaintiffs in Response to Defendants' Discovery Requests

Message

| | |
|---|---|
| **From:** | Chris Placitella [cplacitella@cprlaw.com] |
| **Sent:** | 6/18/2024 11:56:00 PM |
| **To:** | Carl J. Mayer Esq [cyberesquire@aol.com] |
| **Subject:** | Re: CERTIFICATION IN DEFAMATION ACTION... SORRY TO ASK... |

Carl

I dont recall this On the March 31, 2022 telephone call, Mr. Casey told me that "Arno does not have any money because Carl stole it all from him." When I asked Mr. Casey where he got that idea from, he confirmed that Defendant Jacqueline Burger, Esq., and Defendant Daniel P. Mayer told him and Mr. Morrison that Carl stole all of Arno's money.

Sincerely,

Christopher M. Placitella, Esquire
**C / P / R**
Cohen, Placitella & Roth
127 Maple Ave / Red Bank, NJ, 07701
732.747.9003 / 732.747.9004 (fax)
http://www.cprlaw.com

New Jersey Certified Civil Trial Attorney pursuant to Rule 1:39-5(a)

"The very essence of civil liberty certainly consists in the right of every individual to claim protection of the laws whenever he receives an injury."

Marbury v. Madison (1803) (John Marshall)

IMPORTANT CONFIDENTIALITY NOTICE

PRIVILEGED ATTORNEY/CLIENT COMMUNICATION AND/OR ATTORNEY WORK PRODUCT. This message and attachments may contain privileged and confidential information. If you are not an intended recipient of this message, any use, distribution or copying is prohibited; please notify Cohen, Placitella & Roth, P.C. immediately at (732) 747-9003 or by email reply; and permanently delete all copies. Any tax advice contained in this message and attachments may not be used for purposes of (i) avoiding penalties under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**From:** cyberesquire@aol.com <cyberesquire@aol.com>
**Sent:** Tuesday, June 18, 2024 7:52:49 PM
**To:** Chris Placitella <cplacitella@cprlaw.com>
**Cc:** Carl J. Mayer Esq <cyberesquire@aol.com>
**Subject:** CERTIFICATION IN DEFAMATION ACTION... SORRY TO ASK...


DEAR CHRIS:


I AM VERY SORRY TO IMPOSE GIVEN ALL THE ISSUES WITH YOUR FATHER . I AM REALLY SORRY, BUT THE  FEDERAL JUDGE IN THE DEFAMATION CASE HAS GIVEN US UNTIL

THURSDAY TO PRESENT PROOFS AND WE NEED TO HAVE IN HAND BY COB TOMMORROW, WEDNESDAY JUNE 19.

JEFF AND HIS ASSOCIATE, MIKE SABO, PREPARED THE ATTACHED CERTIFICATION FOR YOU TO SIGN. IT WOULD ONLY TAKE A FEW MINUTES TO PDF BACK TO JEFF OR ME OR BOTH.

YOU HAVE MY WORD I WILL NEVER ALLOW YOU TO BE DEPOSED. I WILL EITHER DROP CASE OR GET EVIDENCE IN DISCOVERY I KNOW IS THERE OR SETTLE.

I AM VERY SORRY TO ASK BUT UNLESS WE PRESENT PROOFS THEY COULD BOUNCE THE CASE THURSDAY.

I'M VERY SORRY FOR LAST MINUTE. I'M UNDER A LOT OF STRAIN. I WAS UP ALL NIGHT LAST NIGHT AT █████████████████████████████████████████

MY APOLOGIES AGAIN.

BEST, CARL

Sincerely,

Carl J. Mayer, Esq.
https://en.wikipedia.org/wiki/Carl_J._Mayer
THE NATIONAL TRIAL LAWYERS, TOP 100, 2023
NATIONAL ASSOCIATION OF DISTINGUISHED COUNSEL, TOP ONE PERCENT, 2023

MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
212-382-4686 (P)
212-382-4687 (F)

CarlMayer0000027

174 Nassau Street, Suite 414
Princeton NJ 08542
609-921-0253 (P)
609-921-6964 (F)

20071 Warwick Lane
Quinby, VA 23423
757-442-4191 (P)
212-382-4687 (F)

*******

This message and any attachment are confidential and may be privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

CarlMayer0000028

Message
_____

**From:** cyberesquire@aol.com [cyberesquire@aol.com]
**Sent:** 6/18/2024 11:52:49 PM
**To:** Chris Placitella [cplacitella@cprlaw.com]
**CC:** Carl Mayer [cyberesquire@aol.com]
**Subject:** CERTIFICATION IN DEFAMATION ACTION... SORRY TO ASK...
**Attachments:** 2024 06 17 Placitella Decl-C.docx

DEAR CHRIS:

I AM VERY SORRY TO IMPOSE GIVEN ALL THE ISSUES WITH YOUR FATHER . I AM REALLY SORRY, BUT THE  FEDERAL JUDGE IN THE DEFAMATION CASE HAS GIVEN US UNTIL THURSDAY TO PRESENT PROOFS AND WE NEED TO HAVE IN HAND BY COB TOMMORROW, WEDNESDAY JUNE 19.

JEFF AND HIS ASSOCIATE, MIKE SABO,   PREPARED THE ATTACHED CERTIFICATION FOR YOU TO SIGN. IT WOULD ONLY TAKE A FEW MINUTES TO PDF BACK TO JEFF OR ME OR BOTH.

YOU HAVE MY WORD I WILL NEVER ALLOW YOU TO BE DEPOSED.  I WILL EITHER DROP CASE OR GET EVIDENCE IN DISCOVERY I KNOW IS THERE OR SETTLE.

I AM VERY SORRY TO ASK   BUT UNLESS WE PRESENT PROOFS THEY COULD BOUNCE THE CASE THURSDAY.

I'M VERY SORRY FOR LAST MINUTE.  I'M UNDER A LOT OF STRAIN.  I WAS UP ALL NIGHT LAST NIGHT AT ████████████████████████████████████████████████

MY APOLOGIES AGAIN.

BEST,  CARL

CarlMayer0000029

Sincerely,

Carl J. Mayer, Esq.
https://en.wikipedia.org/wiki/Carl_J._Mayer
THE NATIONAL TRIAL LAWYERS, TOP 100, 2023
NATIONAL ASSOCIATION OF DISTINGUISHED COUNSEL, TOP ONE PERCENT, 2023

MAYER LAW GROUP LLC
1180 Avenue of the Americas, Suite 800
New York, NY 10018
212-382-4686 (P)
212-382-4687 (F)

174 Nassau Street, Suite 414
Princeton NJ 08542
609-921-0253 (P)
609-921-6964 (F)

20071 Warwick Lane
Quinby, VA 23423
757-442-4191 (P)
212-382-4687 (F)

*******

This message and any attachment are confidential and may be privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person. If you properly received this e-mail as a client, co-counsel or retained expert, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

CarlMayer0000030

CarlMayer0000031

Jeffrey M. Pollock
Michael W. Sabo
FOX ROTHSCHILD LLP
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648-2311
(609) 844-3038
JMPollock@foxrothschild.com
MSabo@foxrothschild.com
*Attorneys for Plaintiffs*
*Carl J. Mayer, Esq. and Mayer Law Group, LLC*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ.,<br><br>                Defendants. | Civil Action No.: 3:23-civ-02272 (GC)/(JBD)<br><br>[FILED ELECTRONICALLY] |

I, CHRISTOPHER M. PLACITELLA, ESQ., declare:

1.    I am an attorney-at-law in good standing, licensed to practice in the State of New Jersey and admitted to practice before this Court. I am a partner with the law firm of Cohen, Placitella & Roth and a trial lawyer certified by the Supreme Court of New Jersey. I have personal knowledge of the matters I describe in this declaration.

2.    I have known Plaintiff Carl J. Mayer, Esq. for many years and have worked with him (and his law firm the Mayer Law Group, LLC) on various cases, including serving as co-counsel in the class action case *Desimone v. Springpoint Senior Living, Inc.*, Docket No. MID-L-4958-13 (2013) (Viscomi, J. 2013).

CarlMayer0000032

3.      In Spring 2022, a dispute arose between Arno Mayer, Carl Mayer's father, and Arno's landlord, Mr. Jack Morrison, regarding the conditions of Arno's rented apartment located at 55 Witherspoon Street, Apt. 305, Princeton, New Jersey 08540.

4.      On March 31, 2022, at Carl's request, I spoke with Mr. Robert F. Casey, Esq. (Mr. Morrison's attorney) of the Lenox Law Firm in Lawrenceville, New Jersey about the rent dispute between Arno and Mr. Morrison.

5.      On the March 31, 2022 telephone call, Mr. Casey told me that "Arno does not have any money because Carl stole it all from him." When I asked Mr. Casey where he got that idea from, he confirmed that Defendant Jacqueline Burger, Esq., and Defendant Daniel P. Mayer told him and Mr. Morrison that Carl stole all of Arno's money.

Under 28 U.S.C. 1746, I hereby declare under penalty of perjury that these statements are true and correct.

Executed on _____

CHRISTOPHER M. PLACITELLA, ESQ.

2

CarlMayer0000033

**Messages in chronological order (times are shown in GMT +00:00)**

💬  **+17324237559**

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:23 PM |
| | Hi Chris  most important hope your dad is on the mend | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:24 PM |
| | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:25 PM |
| | Nineties are tough.  Only one in a thousand live to ninety | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:25 PM |
| | Sorry to bother you on certification | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:26 PM |
| | I hope what I sent refreshed your recollection | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:27 PM |
| | I would never ask you to submit something you are not comfortable with | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:32 PM |
| | I remember everything because I was in hospital for a procedure and when I got out you briefed me on your conversation with Casey and I was shocked at allegation Casey made to you  my relatives said that I  stole all of Arno's money because certifications in case show I spent over $1.7 million dollars on arno's care | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:33 PM |
| | Anyway just let me know either way | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 2:34 PM |
| | Best to your dad and hang in there.  Carl | |

| | | |
|---|---|---|
| CP | **Chris Placitella <7324237559>** | 6/20/2024, 4:56 PM |
| | Sorry have been focused on my Dad. I am sorry. I just don't recall this specifically. Would not want to be deposed. Why can't this be done with Demand for admission. How is this not protected by settlement discussions. Is there another way . | |

| | | |
|---|---|---|
| CP | **Chris Placitella <7324237559>** | 6/20/2024, 5:33 PM |
| | Here is my question. Even if they said that to me how is that damage. I would not believe it or stop any relationship with you | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 6:46 PM |
| | Chris  you have done too much for me and my family already and I can never repay you | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 6:46 PM |
| | Don't worry about it we will get it another way | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 6:46 PM |
| | Most important how is dad? | |

| | | |
|---|---|---|
| CM | **Carl Mayer <6094627979>** | 6/20/2024, 6:47 PM |
| | I will do anything you need | |

| | | |
|---|---|---|
| CP | **Chris Placitella <7324237559>** | 6/20/2024, 7:04 PM |
| | He is doing a little better | |

# EXHIBIT F

DANIELPROD#1 Produced by Daniel with his Discovery Responses regarding communications with William "Bill" Taylor

On Thursday, March 10, 2022, 08:01:25 AM EST, Daniel Mayer <danielpmayer@gmail.com> wrote:

Bill - Not sure of whether this is feasible or advisable, but I wonder what you, Jason and Eliot would think about approaching Carl with something like this: I advance Carl $1 million to be paid back to me at a yearly compounded interest rate of 7 percent from his portion of my mom's estate on the condition that Carl (1) signs releases protecting Jackie, Frank and I; (2) he gives me unfettered access to my father; and (3) he eats shit.

Daniel

2

DANIELPROD#1_00051

# EXHIBIT G

Daniel's Supplemental Answers to Interrogatories

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4863
Facsimile:  (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant, Daniel P. Mayer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ.,<br><br>Defendants. | Civil Action No.<br><br>3:23-cv-02272-GC-JBD<br><br>Honorable Georgette Castner, U.S.D.J.<br><br>**SUPPLEMENTAL ANSWERS OF DEFENDANT, DANIEL P. MAYER, TO FIRST SET OF INTERROGATORIES OF PLAINTIFFS, CARL J. MAYER, ESQ. AND MAYER LAW GROUP, LLC** |

To:  R. James Kravitz, Esq.
     Michael W. Sabo, Esq.
     FOX ROTHSCHILD LLP
     Princeton Pike Corporate Center
     997 Lenox Drive
     Lawrenceville, NJ 08648-2311
     (609)-895-3316 - direct
     (609) 895-6746 - direct
     (609) 896-1469 – fax
     rkravitz@foxrothschild.com
     MSabo@foxrothschild.com
     *Attorneys for Plaintiffs*

Defendant, Daniel Mayer ("Defendant" or "Daniel"), by and through his attorneys, Gibbons P.C., hereby responds with Supplemental Answers to the Plaintiffs' First Set of Interrogatories to Daniel as follows:

## **GENERAL OBJECTIONS**

The following general objections apply to each of the separate requests propounded on Defendant. Accordingly, each of Defendant's general objections herein are incorporated by reference in each of Defendant's responses as if separately set forth at length therein:

1.     Defendant's responses are submitted without in any way waiving or intending to waive, but to the contrary, preserving and intending to preserve: (a) all questions as to competency, relevancy, materiality, privilege and admissibility of the response or the subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action; (b) the right to object to the use of any of said responses or any portion thereof or the subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action on any ground; (c) the right to object on any ground at any time to a demand for further responses to these or any other discovery requests; and (d) the right at any time to revise, correct, substitute, supplement, and/or clarify any of Defendant's responses subsequent to the date hereof.

2.     Defendant objects to these discovery requests to the extent any of the requests seek the production of information or documents which disclose any materials or communications protected by any applicable privilege including but not limited to the attorney-client and/or work product privileges.

3.     In the event that any responses and/or documents are inadvertently produced by Defendant that fall within the attorney-client and/or attorney work-product privilege, Defendant

shall not be deemed to have waived its privilege as to any such document or the information contained therein, or the right to the attorney-client privilege or work-product privilege as to any other matter that arises during the course of this litigation or any subsequent proceeding.

4.      Insofar as the Interrogatories call for the disclosure of information or documents of a sensitive nature or non-public financial, pricing or other proprietary information, which may result in prejudice to Defendant that would outweigh a legitimate benefit, if any, to Plaintiff, Defendant objects to responding to the Interrogatories, absent the entry of an appropriate Order of Confidentiality.

5.      These Supplemental Answers are being provided in conformance with the phasing of discovery implemented in this case, including the limitations and clarifications set by the Court during the August 1, 2024 telephone status conference, and thereafter memorialized by Order entered on August 7, 2024 (ECF 34). To the extent that any information/documents produced go beyond the information/documents expressly requested and/or as circumscribed by the Court, such production should not be interpreted as Daniel agreeing that the information/documents support a contention that the statements alleged in the First Amended Complaint were actually made or as Daniel waiving any objections relating to the information/documents produced, or any other information/documents.

Additionally, Daniel is not herein identifying/producing documents/communications by/with counsel representing him.

Subject to and without waiver of the foregoing objections or the specific objections asserted in response to any of Plaintiffs' Interrogatories, Defendant provides the supplemental answers that follow within the limits of said objections.

**INTERROGATORY NO. 1.**      Identify all communications between You and any Defendant concerning the Arno Allegations during the Relevant Time Period.

3

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional and not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he has spoken to Jackie and Frank at least weekly since January 1, 2022 about numerous topics including, but not limited to, Daniel's aunt, Ruth (who is Jackie's mother), his father (Ruth's brother), Daniel and Jackie's children, other cousins, their jobs, and politics, to name a few. Daniel cannot, therefore, recall any specific conversations concerning the Arno Allegations during the Relevant Time Period. Daniel did not take notes or otherwise memorialize these weekly conversations with Jackie and/or Frank and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced in this regard. Written communications include: DANIELPROD#1_00011-12; DANIELPROD#1_00000015-18; DANIELPROD#1_00052; DANIELPROD#1_00053-55; DANIELPROD#1_00044-46; DANIELPROD#1_00047-50.

Daniel has communicated by text message with Jackie during the Relevant Time Period, but is not in possession of any text messages that may be responsive to this inquiry as his text messages were automatically deleted after one year. Additionally, Daniel states that he is not in possession of any text messages with Frank during the Relevant Time Period regarding the Arno Allegations and states that he does not recall having any such communications.

**INTERROGATORY NO. 2.**    Identify all communications between You, Jackie, Frank, and/or Michele concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** See Supplemental Answer to Interrogatory No. 1. Without waiving these objections, Daniel states that he does not recall having any such conversations with Michele during this time period. Written communications include: DANIELPROD#1_00011-12; DANIELPROD#1_00000015-18; DANIELPROD#1_00052; DANIELPROD#1_00053-55; DANIELPROD#1_00044-46; DANIELPROD#1_00047-50; DANIELPROD#1_00013-14.

Daniel states that he is not in possession of any text messages with Michele during the Relevant Time Period regarding the Arno Allegations and states that he does not recall having any such communications. Daniel did not take notes of or otherwise memorialize conversations with Michele and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced in this regard.

**INTERROGATORY NO. 3.**    Identify all communications between You and Spitzer concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery,

and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that his recollection is that he had one conversation with Eliot Spitzer during this time period. Spitzer called him asking why Carl was asking Spitzer for money to pay Daniel and Carl's father's rent. Written communications include: DANIELPROD#1_00028-29; DANIELPROD#1_00036-41.

**INTERROGATORY NO. 4.**      Identify all communications between You and Taylor concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he does not recall having any such conversations with William Taylor during this time period. Daniel did not take notes of or otherwise memorialize conversations with Taylor and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced in this regard. Written communications include: DANIELPROD#1_00028-29; DANIELPROD#1_00030-35; DANIELPROD#1_00044-46; DANIELPROD#1_00047-50; DANIELPROD#1_00051.

**INTERROGATORY NO. 5.**      Identify all communications between You and Mr. Casey concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states none.

**INTERROGATORY NO. 6.**      Identify all communications between You and Jack Morrison concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states none.

**INTERROGATORY NO. 7.**          Identify all communications between You and Brown concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he does not recall having any such conversations with Jason Brown during this time period. Daniel did not take notes of or otherwise memorialize conversations with Brown and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced in this regard. Written communications include: DANIELPROD#1_00028-29.

**INTERROGATORY NO. 8.**          Identify all communications between You and Felsenthal concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states none.

**INTERROGATORY NO. 9.**          Identify all communications between You and Pamela Long concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he does not recall speaking to Pamela Long from January 1, 2022 through March 25, 2022 concerning the Arno Allegations and he can state with certainty that he did not speak to her after March 25, 2022 regarding the Arno Allegations. Daniel did not take notes of or otherwise memorialize conversations with Long and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced with regard to the time period from January 1, 2022 through March 25, 2022. Written communications include: DANIELPROD#1_00042-43.

**INTERROGATORY NO. 10.**          Identify all communications between You and Karen concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he has had no oral communications with Karen regarding the Arno Allegations during the Relevant Time Period. Written communications include: DANIELPROD#1_00011-12; DANIELPROD#1_00015-18; DANIELPROD#1_00026-27.

**INTERROGATORY NO. 11.**      Identify all communications between You and Dr. Naini concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states none.

**INTERROGATORY NO. 12.**      Identify all communications between or among You, any Third-Party Witness, and any other person concerning the Arno Allegations during the Relevant Time Period.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential.

Without waiving these objections, Daniel states that he does not recall having any such communications with Third Party Witnesses that are not otherwise set forth herein. See Answer to Interrogatory Nos. 1 and 2. Additionally, Daniel states that he is not in possession of any text messages with any other named individuals during the Relevant Time Period regarding the Arno Allegations and states that he does not recall having any such communications. Daniel did not take notes of or otherwise memorialize conversations with Third Party Witnesses and, thus, there would be no notes or other memorialization with which to refresh his recollection or to be produced in this regard.

**INTERROGATORY NO. 13.**      Identify and describe each of Your methods, and programs for creating, saving, storing, maintaining, sharing, backing up, and restoring documents and communications during the Relevant Time Period. For the avoidance of doubt "identify" has the meaning defined above, and includes as well for this interrogatory, the identification of the date that You began to use such system or program or method; the

7

date that You ceased to use such system or program or method; the systems, methods, and programs used; the locations where the documents and communications are stored or maintained; the locations where any back-up data or documents are stored, especially and including for those systems, programs, or methods no longer in active use; the hardware used to store the documents and communications and any back- ups; the policies governing the use of the systems, programs, or methods; and the policies governing the retention of documents and communications.

**SUPPLEMENTAL ANSWER:** Daniel objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not proportional, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine, and that is otherwise confidential, irrelevant, and not propounded as a result of any allegation of misconduct or failure to preserve. Without waiving these objections, Daniel states that his sole personal email account and his sole personal cell phone number were searched.

Plaintiffs are not entitled to discovery on discovery. As Plaintiffs are aware, this phase of discovery is focused on whether the statements alleged in the First Amended Complaint ("FAC") were actually made. Responsive (liberally construed by Daniel) email communications have been produced and there is no allegation of misconduct or failure to preserve any email messages. Moreover, with respect to text message communications, see attached Declaration of Daniel Mayer [DANIELPROD#1_00056-00059] attesting to the fact that he has ***never*** texted with six of the seven individuals named in the FAC as having allegedly received the defamatory statements from him. Thus, no text messages with these individuals ever existed: (1) Jack Morrison, (2) Robert Casey, Esq., (3) David Felsenthal, Esq., (4) Jason Brown, Esq., (5) Dr. Sean Naini, and (6) Pamela Long. This is supported by the fact that none of these six individuals produced copies of text messages with Daniel in response to the subpoenas served on them in this case. Moreover, none of those individuals who provided Declarations in this matter asserted the existence of, or attached as exhibits, any text messages with Daniel.

The Declaration further provides that, although Daniel has texted, albeit rarely, with Carl's wife, Karen (the only one of the seven alleged recipients with whom Daniel ever texted), those text messages related to issues such as Carl's health and the death of Arno Mayer, i.e., limited texts on issues wholly unrelated to statements allegedly made by Daniel as set forth in the FAC. Thus, no responsive text messages ever existed. This is supported by Karen's Declaration (submitted by Plaintiffs in an effort to support their claims), which, although including a copy of an email from Daniel to Carl, on which Karen was copied, does not include any text messages between Karen and Daniel.

Furthermore, it is alleged in the FAC that Carl learned from Eliot Spitzer that Daniel purportedly made the subject statements to Felsenthal, Brown, and Naini. As set forth in the Declaration, Daniel ***never*** texted with Eliot Spitzer. Thus, no text messages with Spitzer ever existed.

## <u>CERTIFICATION</u>

I hereby certify that the foregoing supplemental answers to Interrogatories are true.  I further certify that in response to the foregoing Interrogatories, I have furnished all information available to me and to my agents, employees and attorneys. As to those answers that are not within my personal knowledge, I have certified that I have provided the name and address of any person from whom such information was received, or, where the source of such information is documentary, a full description of the Document or Written Communication, including its location.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*Daniel Mayer*
_____
DANIEL P. MAYER


Dated:        November 21, 2024

9

# EXHIBIT H

Daniel Mayer's November 22, 2024 Declaration

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4863
Facsimile:  (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant Daniel P. Mayer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, L.L.C.,<br><br>                    Plaintiff,<br><br>        v.<br><br>DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ.,<br><br>                    Defendants. | Civil Action No.<br>3:23-cv-02272-GC-JBD<br>Honorable Georgette Castner, U.S.D.J.<br><br>**DECLARATION OF<br>DANIEL P. MAYER** |

I, Daniel P. Mayer, of full age, do hereby certify and declare as follows:

1.      I am one of three Defendants named in the above-captioned action and I am providing this Declaration in connection with a discovery issue raised by Plaintiffs regarding my text messages. As such, I have personal knowledge of the facts set forth herein.

2.      The First Amended Complaint ("FAC") alleges that I purportedly made defamatory statements, orally and in writing, that my brother, Plaintiff Carl Mayer, stole money from our father and kept family and friends away from my father.

3.      According to the FAC, these statements were allegedly made to: (1) Jack Morrison, (2) Robert Casey, Esq., (3) David Felsenthal, Esq., (4) Jason Brown, Esq., (5) Dr. Sean Naini, (6) Karen Zemble, and (7) Pamela Long.

4.      The Court has permitted the phasing of discovery, with the first phase focusing on whether the statements alleged to have been made to these seven individuals were actually made as set forth in the FAC.

5.      In connection with written discovery exchanged among the parties on whether the statements were actually made, an issue has arisen in connection with my text messages.

6.      I hereby state that I have never texted six of seven of the individuals named in the FAC as having allegedly received the defamatory statements from me. Those individuals are: (1) Jack Morrison, (2) Robert Casey, Esq., (3) David Felsenthal, Esq., (4) Jason Brown, Esq., (5) Dr. Sean Naini, and (6) Pamela Long. This is supported by the fact that none of these six individuals produced copies of text messages with me in response to the subpoenas served on them in this case. Moreover, none of those individuals who provided Declarations in this matter asserted the existence of, or attached as exhibits, any text messages with me.

DANIELPROD#1_00057

7.      Although I have texted, albeit rarely, with Carl's wife, Karen Zemble ("Karen"), those text messages related to issues such as my brother's health and my father's death. Our texts were not related to any statements allegedly made by me as set forth in the FAC. This is supported by Karen's Declaration (submitted by Plaintiffs in an effort to support their claims), which, although including a copy of an email from me to my brother, on which Karen was copied, does <u>not</u> include any text messages between Karen and me.

8.      Additionally, Plaintiffs contend in their Answers to Interrogatories that Plaintiffs learned of the purported statements allegedly made to David Felsenthal, Esq., Jason Brown, Esq. and Dr. Sean Naini from Eliot Spitzer. I hereby state I have never texted with Eliot Spitzer.

DANIELPROD#1_00058

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated:    November 22, 2024

By:    *Daniel Mayer*
_____
DANIEL P. MAYER

DANIELPROD#1_00059

# EXHIBIT I

Relevant Portions of  the Transcript of the October 17, 2024 Status Conference

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

```
CARL J. MAYER, et al.,        ) Case No. 3:23-cv-02272-GC-JBD
                              )
              Plaintiffs,     )
                              ) Clarkson S. Fisher Building
versus                        ) & U.S. Courthouse
                              ) 402 East State Street
JACQUELINE BURGER, et al.,    ) Trenton, New Jersey 08608
                              )
              Defendants.     ) October 17, 2024
                              ) 2:04 p.m.
```

TRANSCRIPT OF STATUS CONFERENCE
BEFORE HONORABLE J. BRENDAN DAY
UNITED STATES MAGISTRATE JUDGE

APPEARANCES VIA MICROSOFT TEAMS:

```
For the Plaintiffs:           Fox Rothschild LLP
                              By:  MICHAEL WILLIAM SABO, ESQ.
                              212 Carnegie Center
                              Suite 400
                              Princeton, NJ 08540

For the Defendants,           Kent & McBride, LLC
Jacqueline Burger             By:  KATHRYN V. McCALLION, ESQ.
and Frank M. Glaser:          1040 Kings Highway North
                              Suite 600
                              Cherry Hill, NJ 08106

ESR/Courtroom Deputy:         Christopher Yoos

TRANSCRIPTION SERVICE:        TRANSCRIPTS PLUS, INC.
                              435 Riverview Circle
                              New Hope, Pennsylvania 18938
                              Telephone:  215-862-1115
                              e-mail CourtTranscripts@aol.com
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

APPEARANCES VIA MICROSOFT TEAMS:
(continued)

For the Defendant,        Gibbons PC
Daniel P. Mayer:          By:  NOMI LOWY, ESQ.
                          One Gateway Center
                          Newark, NJ 07102

1  different view.  And so that's an observation.  And I -- this

2  has turned out to be, at least from my perspective, messier

3  than was proposed originally.

4          Mr. Sabo, is there anything else you want to raise

5  today on the record?

6          MR. SABO:  Your Honor, if I could, respectfully, I

7  would just like to reiterate again that in the context of

8  what's been said, we have a party who is denying allegations,

9  and at the same time admitting that relevant evidence is

10 purportedly gone, which goes to the statements.

11         So, I will meet and confer and, of course, abide by

12 all of Your Honor's rulings, but I just feel duty-bound to

13 mention that again.

14         THE COURT:  Sure.

15         MS. LOWY:  And, Your Honor, I would like to just

16 respond by saying there is no allegation that Daniel has not

17 said that he's saying that relevant text messages are gone.

18 I'm not even sure he text any or most of these individuals,

19 most of the seven recipients ever.  So --

20         THE COURT:  Well, that's exactly my point, is that's

21 the sort of thing that should be hashed out in a meet and

22 confer.  Because, you know, it's one thing to say spoliation.

23 It's another thing if the response is "I didn't text them in

24 the first place" and so it's a moot issue.  And so that's

25 exactly my point.  You should be meeting and conferring.

33

1          And, Mr. Sabo, if the text messages that would have
2    been there, you know, if there's a certification that, you
3    know, there's nothing -- there was nothing relevant in the
4    first place, that may be a totally different story.
5          MR. SABO:  Your Honor, if I could, and I apologize --
6          THE COURT:  May be a totally different story.
7          MR. SABO:  I understand, Your Honor.  Though, in the
8    response where Daniel discusses this, I just want to note on
9    the deletion issue, he notes that they were -- the information
10   was relevant.  So, like, we already have -- I just submit, we
11   already have parts of that.  But I understand what Your Honor
12   is saying, and I will discuss with my client what you've said,
13   as well.
14          Thank you.
15          THE COURT:  And with counsel.
16          MR. SABO:  Yes, of course.
17          THE COURT:  That's the whole --
18          MR. SABO:  Yes.
19          THE COURT:  That's the whole point.
20          MR. SABO:  Yes, of course.  Yes, of course.
21          THE COURT:  Ms. McCallion?
22          MS. McCALLION:  Oh, I have nothing else to add at
23   this point, Your Honor.
24          THE COURT:  All right.  Thank you, Counsel.  I
25   appreciate it.  And I appreciate -- again, not casting

34

1  aspersions on anyone.  We had previously scheduled this

2  telephone conference.  And just to sort of cap off our

3  discussion, it's it's clear to me, and I think these disputes

4  would benefit from further discussion amongst counsel.  So

5  we'll reschedule a telephone call or an in-person conference,

6  once counsel has had a chance to meet and confer.

7          I would like to go off the record and have a brief

8  conversation with counsel on potential efforts to resolve the

9  matter, short of further litigation.

10          And so, Chris, if we could go off the record now, I'd

11  appreciate it.

12          (Whereupon, the hearing was adjourned.)

13

14              CERTIFICATE OF TRANSCRIBER

15      I, KAREN HARTMANN, a certified Electronic Court

16  Transcriber, certify that the foregoing is a correct transcript

17  from the electronic sound recording of the proceedings in the

18  above-entitled matter.

19

20  *Karen Hartmann*

21

22  Karen Hartmann, AAERT CET 475   Date: October 21, 2024

23  TRANSCRIPTS PLUS, INC.

24

25

# EXHIBIT J

JACKIE FRANK 44

No I didn't. I was thinking of forwarding the email from Casey to him. What do you think?

I thought the text was going to tell Eliot that Carl just received over $100K so it's confusing why he didn't put that toward the rent. Anyhow, there's not much to be gained by communicating either point to Eliot. He just needs to decide if he wants to loan Carl $.

I was going to include that in the email. I can send him the text now. Is that ok?

Sure

Just sent Eliot the following text: Daniel told me that Carl has again asked you for $91,000. As you are aware, Carl has been using Arno's account for his own personal expenses. In addition, as part of a settlement in which the NY County Surrogate granted Frank's and my petition to be relieved as trustees of Carl's trust, Carl received a payment of more than $150,000 at the end of April. Giving him another $91,000 will only encourage him to keep stealing money from Arno.

Also: I also put in a call to the landlord's lawyer. He forwarded me the latest decision and order from the landlord/tenant court. I will forward that email to you now.

May 25, 2022 at 9:10 AM

Sorry, I can't talk right now.

Hi Daniel, call me when you can. Thanks.

I'm going to forward you the email I got back from Eliot and I have a question about my talking to a lawyer in NJ.

Ok

May 25, 2022 at 10:54 AM

Just tell your lawyer that I will be calling him and you give him permission to speak with me as long as he does not reveal and privileged information. Thanks.

**KENT & McBRIDE, P.C.**
Diana R. Brocco, Esquire
ATTORNEY ID: 020261996
Kathryn V. McCallion, Esquire
ATTORNEY ID: 412932022
1040 Kings Highway North, Suite 600
Cherry Hill, NJ 08034
856-667-3113 -- Telephone
*Attorney for Defendants, Jacqueline Burger, Esquire and Frank Glaser, Esquire*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| Carl J. Mayer, Esquire and Mayer Law Group, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Daniel P. Mayer, Jacqueline Burger, Esquire and Frank M. Glaser, Esquire,<br><br>　　　　Defendants. | Civil Action No.<br>3:23-cv-02272-GC-JBD<br>Honorable Georgette Castner, U.S.D.J.<br><br><br>**DECLARATION OF KATHRYN V.**<br>**MCCALLION, ESQ.** |

I, Kathryn V. McCallion, Esq., of full age, do hereby certify and declare as follows:

1. I am an Associate at Kent & McBride, P.C., attorneys for Defendants, Jaqueline Burger, Esq. ("Jackie") and Frank M. Glaser, Esq. ("Frank"), in the above-captioned matter. I am providing this Declaration in connection with unresolved discovery disputes between the parties.

2. Attached as ***Exhibit 1*** is a true copy of Carl Mayer's ("Carl") Answers to Jackie and Frank's Interrogatories.

3. Attached as ***Exhibit 2*** is a true copy of David Felsenthal, Esq.'s signed Certification.

4. Attached as ***Exhibit 3*** is a true copy of Robert Casey, Esq.'s signed Certification.

5.  Attached as **Exhibit 4** is a true copy of Jackie's Answer to Interrogatory No. 13.

6.  Attached as **Exhibit 5** is a true copy of Frank's Answer to Interrogatory No. 13.

7.  Attached as **Exhibit 6** is a true copy of Jackie and Frank's letter dated November 22, 2024, with Supplemental Answers to Discovery.

8.  Attached as **Exhibit 7** is a true copy of Robert Casey, Esq.'s Supplemental Declaration.

9.  Attached as **Exhibit 8** is a true copy of Dr. Sean Naini's signed Declaration.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willingly false, I am subject to punishment.

By: _____

Kathryn V. McCallion, Esq.

Dated: December 4, 2024

EXHIBIT 1

Jeffrey M. Pollock
Michael W. Sabo
Fox Rothschild LLP
212 Carnegie Center
Suite 400
Princeton, NJ 08540
(609) 844-3038
JMPollock@foxrothschild.com
MSabo@foxrothschild.com
*Attorneys for Plaintiffs*
*Carl J. Mayer, Esq. and Mayer Law Group, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC, | Civil Action No.: 3:23-civ-02272 (GC)/(JBD) |
| Plaintiffs, | [FILED ELECTRONICALLY] |
| v. | |
| DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., | |
| Defendants. | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO**
**DEFENDANTS BURGER AND GLASER'S INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Civil Rules 26.1 and 33.1 of the District of New Jersey, Plaintiffs Carl J. Mayer, Esq. and Mayer Law Group, LLC ("Plaintiffs"), hereby object and respond to the Interrogatories ("Interrogatories") propounded by Defendants, Jacqueline Burger, Esq. and Frank Glaser, Esq. ("Defendants"), as set forth below. The responses reflect Plaintiffs' present knowledge of the matters covered by Defendants' Interrogatories and their best efforts to identify the information and documents responsive to those Interrogatories. Plaintiffs' efforts are continuing, however, and they reserve

the right to amend or supplement the responses and objections herein as may be necessary or appropriate in the future.

 

As to objections,

FOX ROTHSCHILD LLP
*Attorneys for Plaintiffs*
*Carl J. Mayer, Esq. and Mayer Law Group, LLC*

By:  s/ Jeffrey M. Pollock
             Jeffrey M. Pollock, Esq.

Dated: September 24, 2024         Michael W. Sabo, Esq.

## PRELIMINARY STATEMENT

1.      By responding to these interrogatories, Plaintiffs do not waive or intend to waive: (a) any objections as to the competency, relevancy, materiality, privilege, or admissibility as evidence, or any other objections and/or grounds for exclusion that may be applicable at trial or other hearing or proceeding, all of which objections and grounds are expressly reserved and may be made at the time of trial or other hearing or proceeding; (b) the right on any ground to the use of the documents produced in response to the interrogatory in any hearing or trial or at any other point during the litigation; (c) the right to object on any ground at any time to a demand for further response to these interrogatories; and (d) the right at any time to revise, correct, add to, supplement, or clarify any of the responses contained therein.

2.      Plaintiffs' responses and objections are made solely for the purposes of this action and for no other purpose and are supplied subject to that limitation. Plaintiffs reserve the right to object on any ground to the use of documents produced in response to these interrogatories for any purpose, in whole or in part, in any subsequent proceeding, in this or any other action.

3.      Any statement made by Plaintiffs in these responses that it will produce any documents responsive to a particular interrogatory is not an admission by Plaintiffs to the existence or non-existence of specific responsive documents or information, that any information contained within the responses is relevant or admissible as evidence, or that any statement or characterization propounded in the interrogatory is accurate or complete.

4.      Plaintiffs' responses to these interrogatories shall not be construed as a waiver of the confidentiality of any such information produced or not produced. To the extent that Plaintiffs respond to an interrogatory by producing or not producing documents, all such information is subject to the protective order to be entered in this case (the "Confidentiality Order"), and all responses must be treated accordingly.

5.      Plaintiffs reserve the right at any time to revise, supplement, correct, clarify, or add to these responses and objections, or to revise, supplement, correct, clarify, or add to any production of information made pursuant to these interrogatories. Plaintiffs further reserve the right to object on any ground at any time to a demand for further answers to these interrogatories.

6.      Plaintiffs' responses are based upon reasonable review and diligent investigation conducted to date of those sources within its control where Plaintiffs reasonably believe responsive information may exist.

7.      Plaintiffs' responses and objections are submitted without prejudice to Plaintiffs' right to produce evidence of any subsequently discovered fact. Plaintiffs accordingly reserve the right to provide further responses and objections as she ascertains additional facts.

8.      Plaintiffs reserve all objections or other questions as to the competency, relevancy, materiality, privilege, or admissibility as evidence in any subsequent proceeding or trial of this or any other action for any purpose whatsoever of Plaintiffs' responses herein and any document or thing provided in response to Defendants' interrogatories.

## **GENERAL OBJECTIONS**

Plaintiffs assert the following General Objections, which apply to each and every separately-numbered interrogatory below as if set forth fully therein. Failure to reiterate a General Objection below does not constitute a waiver of that or any other objection.

1.      Plaintiffs object to these interrogatories to the extent that they seek information or documents that are protected from discovery by the attorney-client privilege, the work product doctrine, joint defense privilege or any other applicable privilege. By making a response to any such interrogatory, Plaintiffs do not waive the attorney-client privilege, work-product doctrine, joint defense privilege and/or any other applicable privilege as to that interrogatory or any future

discovery request. To the extent that Plaintiffs inadvertently disclose any information that, in whole or in part, contains information that is protected by the attorney-client privilege, work-product doctrine, joint defense privilege and/or any other applicable privilege, such disclosure does not waive the protection of that privilege.

2.       Plaintiffs object to these interrogatories to the extent that they seek documents or information not required to be provided under the Federal Rules of Civil Procedure.

3.       Plaintiffs object to each and every "instruction" and "definition and guideline" to the extent that it purports to incorporate any meaning for a word or phrase other than its legal, usual and/or customary meaning.

4.       Plaintiffs object to the definition of "you," and all forms thereof, as overly broad resulting in interrogatories which would impose an unreasonable burden and expense upon Plaintiffs well beyond permissible discovery and which otherwise lack proportionality required by the Federal Rules of Civil Procedure.

5.       Plaintiffs object to each and every request, instruction and definition to the extent that it seeks to require Plaintiffs to do more than use reasonable diligence to locate responsive documents based on an examination of those files that reasonably may be expected to yield responsive documents and an inquiry of those persons who reasonably may be expected to possess responsive documents.

6.       Plaintiffs object to these interrogatories to the extent they seek production of information for an undefined period of time.

7.       Plaintiffs object to these interrogatories to the extent that Defendants, collectively or individually, are in possession, custody or control of the information sought, or the information sought can be had from some other source that is more convenient, less burdensome

and/or less expensive.

## INTERROGATORIES

## AS TO DEFENDANT, JACQUELINE BURGER, ESQ.:

1.      Identify each individual who advised you that the purported statements alleged in the FAC were made by Jackie to any of the Seven Alleged Recipients, including their name, date, manner of communication, and the substance of what you were purportedly advised by each.

**ANSWER:**

**Plaintiffs object to this interrogatory in that it purports to be a single interrogatory but is multiple interrogatories. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity whether created by statute or common law. Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs state that they learned about Defendants' defamatory statements from several of the individuals themselves, while Plaintiffs learned of other defamatory statements through various non-parties. Specifically, Plaintiffs learned about Jackie's defamatory statements to Mr. Morrison and Mr. Casey made on or about March 31, 2022 from Christopher M. Placitella, Esq. Mr. Casey and Mr. Morrison informed Mr. Placitella of Jackie's March 31, 2022 defamatory statements regarding Carl's stealing all of Arno's money and Carl's denial of/blocking access to his father. Mr. Placitella subsequently informed Carl of Jackie's defamatory statements on April 1, 2022.**

**Mr. Placitella had been in frequent communication with Mr. Casey (who represented Mr. Morrison, Arno's landlord) concerning a class action lawsuit filed by Arno Mayer against Mr. Morrison. Mr. Placitella generously offered to help resolve the issues between Arno Mayer and Mr. Morrison because Mr. Placitella and Carl Mayer had a long-standing personal and professional relationship dating back forty (40) years. Mr. Placitella advised Carl Mayer that he would speak with Mr. Casey on March 31, 2022. Carl Mayer advised Mr. Placitella that he would be unavailable that day because he was undergoing heart surgery at New York Presbyterian Hospital.**

**Carl Mayer spoke to Mr. Placitella on April 1, 2022, to discuss the conversation Mr. Placitella had with Mr. Casey the day prior. When Carl Mayer spoke to Mr. Placitella, Mr. Placitella said to Carl in sum and substance, "Casey said that your relatives, specifically your brother Daniel, and cousins Jackie and Frank told Casey and Morrison that 'Arno could not pay his rent because I—Carl Mayer—stole all of Arno's money.'" Carl Mayer was shocked to learn of these defamatory statements because Daniel (with supporting certifications from Jacqueline Burger and Frank Glaser) had unsuccessfully litigated these**

issues before the Superior Court of New Jersey culminating in a dismissal with prejudice in June 2021. The Superior Court of New Jersey, Appellate Division, dismissed Daniel's appeal with prejudice in December 2021.

The Princeton Police Department similarly found no evidence to support Daniel Mayer's false allegations of "elder abuse" and the indictable offense of endangering the welfare of the elderly or disabled under N.J.S.A. 2C:24-8. Defendants' complaints to the New Jersey Division of Family Services and the Mercer County Board of Social Services were similarly never acted upon due to a lack of evidence.

Plaintiffs learned of Jackie's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

      2.      In regard to paragraph #34 of the FAC, identify all facts upon which you base your contention that Jackie purportedly made alleged defamatory statements to Jack Morrison on March 31, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

**<u>ANSWER:</u>**

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.

Notwithstanding the foregoing specific and general objections, see Response to Interrogatory No. 1.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

3.      In regard to paragraph #34 of the FAC, identify all facts upon which you base your contention that Jackie purportedly made alleged defamatory statements to Robert F. Casey, Esq. on March 31, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing. Notwithstanding the foregoing specific and general objections, see Response to Interrogatory No. 1.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

4.      In regard to paragraph #46 of the FAC, identify all facts upon which you base your contention that Jackie purportedly made alleged defamatory statements to David Felsenthal, Esq. during the week of May 18, 2022 – May 26, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs learned of Jackie's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

5.    In regard to paragraph #47 of the FAC, identify all facts upon which you base your contention that Jackie purportedly made alleged defamatory statements to Jason Brown, Esq. during the week of May 18, 2022 – May 26, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs learned of Jackie's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

6.    Describe in detail, including the date, those present/copied, and the substance of all written and oral communications you have had with Christopher M. Placitella, Esq. regarding Jackie's purported statements from March 31, 2022 to present, that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this interrogatory to the extent it seeks the**

substance of "all written and oral communications" and is overly broad, unduly burdensome and harassing. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, work product doctrine or similar statutory, joint defense privilege, common interest privilege or common law privilege.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with Christopher M. Placitella, Esq. about Jackie's defamatory statements on the following dates:

1. <u>March 30, 2022</u> (Mr. Placitella and Plaintiffs discussing Arno Mayer landlord case and Mr. Placitella providing legal advice).
2. <u>March 31, 2022</u> (Mr. Placitella informing Plaintiffs that he spoke to Mr. Casey and providing legal advice).
3. <u>April 3, 2022</u> (Plaintiffs discussing Defendants' defamatory statements with Mr. Placitella and providing legal advice).
4. <u>July 17, 2022 – July 20, 2022</u> (Plaintiffs discussing Arno Mayer case legal advice with Mr. Placitella)
5. <u>June 18, 2024</u> (Plaintiffs exchange emails with Mr. Placitella concerning this case).
6. <u>June 19, 2024</u> (Plaintiffs forwarding March 30, 2022 email to Mr. Casey about Defendants' defamatory comments, including Plaintiffs' recollection from call with Mr. Placitella that Casey told Mr. Placitella Defendants said "Carl stole all of Arno's money").
7. <u>June 20, 2024</u> (Plaintiffs and Mr. Placitella discussing case over telephone).

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

7.    Set forth all communications (written or oral) with Eliot Spitzer, from January 1, 2022 through present, of which you are aware, that supports a contention that Jackie made the statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

<u>ANSWER:</u>

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all communications (written or oral)" and is overly broad, unduly burdensome and harassing. Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with Eliot Spitzer about Defendants' defamatory statements on the following dates:

**On May 25, 2022, Plaintiffs emailed Eliot Spitzer about Defendants' defamatory statements to Mr. Spitzer, William Taylor, Jason Brown, Esq., and David Felsenthal, Esq. Mr. Spitzer responded by email on May 26, 2022 and copied Jason Brown, Esq., William Taylor, David Felsenthal, Esq., Defendant Jacquelne Burger, Esq., and Defendant Daniel Mayer. Plaintiffs responded via email only to Mr. Spitzer on May 27, 2022.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

8.      Set forth all communications (written or oral) with William Taylor, from January 1, 2022 through present, of which you are aware, that supports a contention that Jackie made the statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all communications (written or oral)" and is overly broad, unduly burdensome and harassing. Notwithstanding the foregoing specific and general objections, Plaintiffs state that they have not had communications with Mr. Taylor directly about Defendants' defamatory statements.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

9.      Set forth all communications (written or oral) with Michele Burger, from January 1, 2022 through present, of which you are aware, that supports a contention that Jackie made the statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it**

seeks "all communications (written or oral)" and is overly broad, unduly burdensome and harassing.

Notwithstanding the foregoing specific and general objections, on May 4, 2022, Michele Burger responded via email to Daniel's May 3, 2022 defamatory statement (also made via email) that she "agree[d] with everything Daniel said in his message" and that she "can't help but wonder if there was some financial reward that accompanied the award and if you're embezzling that too." Michele's May 4, 2022 email agreed with Daniel's May 3, 2022 defamatory statement that Carl "blocked [Arno's] access to [Daniel], his sister, and my kids." In the May 3, 2022 email, Daniel accuses Carl of manipulating Arno, a crime under N.J.S.A. 2C:24-8 (endangering the welfare of the elderly or disabled). The May 3, 2022 email repeated and related back to Defendants' prior false statements on or about March 31, 2022 that accused Carl of stealing his father Arno's money and blocking all access to Arno.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

10.    Describe in detail, including the date, those present/copied, and the substance of, all written and oral communications you have had with any other individuals (other than privileged communications with counsel representing you) regarding Jackie's purported statements made from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

<u>ANSWER:</u>

Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, spousal/marital communications privilege, work product doctrine or similar statutory or common law privilege.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with other individuals about Jackie's defamatory statements on the following dates:

On April 8, 2022, Plaintiffs emailed Mr. Casey about Defendants' defamatory statements, including that Mr. Casey "told Mr. Placitella that [Defendants] stated [Carl] stole Arno's money." Shortly after, Mr. Casey confirmed that he spoke to Mr. Placitella about "helping" Arno. Mr. Casey did not mention or deny that Defendants defamed Plaintiffs.

On May 25, 2022, Plaintiffs emailed Eliot Spitzer about Defendants' defamatory statements to Mr. Spitzer, William Taylor, Jason Brown, Esq., and David Felsenthal, Esq. Mr. Spitzer

responded by email on May 26, 2022 and copied Jason Brown, Esq., William Taylor, David Felsenthal, Esq., Defendant Jacqueline Burger, Esq., and Defendant Daniel Mayer. Plaintiffs responded via email only to Mr. Spitzer on May 27, 2022.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

## INTERROGATORIES

### AS TO DEFENDANT, FRANK GLASER, ESQ.:

1.    Identify each individual who advised you that the purported statements alleged in the FAC were made by Frank to any of the Seven Alleged Recipients, including their name, date, manner of communication, and the substance of what you were purportedly advised by each.

### ANSWER:

Plaintiffs object to this interrogatory in that it purports to be a single interrogatory but is multiple interrogatories. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information that is protected by the attorney-client privilege, the work-product doctrine, or other applicable privilege or immunity whether created by statute or common law. Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they learned about Frank's defamatory statements from the several of the individuals themselves, while Plaintiffs learned of other defamatory statements through various non-parties. Specifically, Plaintiffs learned about Frank's defamatory statements to Mr. Morrison and Mr. Casey made on or about March 31, 2022 from Christopher M. Placitella, Esq. Mr. Casey and Mr. Morrison informed Mr. Placitella of Frank's March 31, 2022 defamatory statements regarding Carl's stealing all of Arno's money and Carl's denial of/blocking access to his father. Mr. Placitella subsequently informed Carl of the Frank's defamatory statements on April 1, 2022.

Mr. Placitella had been in frequent communication with Mr. Casey (who represented Mr. Morrison, Arno's landlord) concerning a class action lawsuit filed by Arno Mayer against Mr. Morrison. Mr. Placitella generously offered to help resolve the issues between Arno Mayer and Mr. Morrison because Mr. Placitella and Carl Mayer had a long-standing personal and professional relationship dating back forty (40) years. Mr. Placitella advised Carl Mayer that he would speak with Mr. Casey on March 31, 2022. Carl Mayer advised Mr. Placitella that he would be unavailable that day because he was undergoing heart surgery at New York Presbyterian Hospital.

Carl Mayer spoke to Mr. Placitella on April 1, 2022, to discuss the conversation Mr. Placitella had with Mr. Casey the day prior. When Carl Mayer spoke to Mr. Placitella, said

to Carl in sum and substance, **"Casey said that your relatives, specifically your brother Daniel, and cousins Jackie and Frank told Casey and Morrison that 'Arno could not pay his rent because I—Carl Mayer—stole all of Arno's money.'"** Carl Mayer was shocked to learn of these defamatory statements because Daniel (with supporting certifications from Jacqueline Burger and Frank Glaser) had unsuccessfully litigated these issues before the Superior Court of New Jersey culminating in a dismissal with prejudice in June 2021. The Superior Court of New Jersey, Appellate Division, dismissed Daniel's appeal with prejudice in December 2021.

The Princeton Police Department similarly found no evidence to support Daniel Mayer's false allegations of "elder abuse" and the indictable offense of endangering the welfare of the elderly or disabled under N.J.S.A. 2C:24-8. Defendants' complaints to the New Jersey Division of Family Services and the Mercer County Board of Social Services were similarly never acted upon due to a lack of evidence.

Plaintiffs learned of Frank's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants (including Frank) told Mr. Spitzer that **"Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'"** Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

2    In regard to paragraph #34 of the FAC, identify all facts upon which you base your contention that Frank purportedly made alleged defamatory statements to Jack Morrison on March 31, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

## ANSWER:

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they learned about Frank's defamatory statements from the several of the individuals

themselves, while Plaintiffs learned of other defamatory statements through various non-parties. Specifically, Plaintiffs learned about Frank's defamatory statements to Mr. Morrison and Mr. Casey made on or about March 31, 2022 from Christopher M. Placitella, Esq. Mr. Casey and Mr. Morrison informed Mr. Placitella of Frank's March 31, 2022 defamatory statements regarding Carl's stealing all of Arno's money and Carl's denial of/blocking access to his father. Mr. Placitella subsequently informed Carl of Frank's defamatory statements on April 1, 2022.

Mr. Placitella had been in frequent communication with Mr. Casey (who represented Mr. Morrison, Arno's landlord) concerning a class action lawsuit filed by Arno Mayer against Mr. Morrison. Mr. Placitella generously offered to help resolve the issues between Arno Mayer and Mr. Morrison because Mr. Placitella and Carl Mayer had a long-standing personal and professional relationship dating back forty (40) years. Mr. Placitella advised Carl Mayer that he would speak with Mr. Casey on March 31, 2022. Carl Mayer advised Mr. Placitella that he would be unavailable that day because he was undergoing heart surgery at New York Presbyterian Hospital.

Carl Mayer spoke to Mr. Placitella on April 1, 2022, to discuss the conversation Mr. Placitella had with Mr. Casey the day prior. When Carl Mayer spoke to Mr. Placitella, said to Carl in sum and substance, "Casey said that your relatives, specifically your brother Daniel, and cousins Jackie and Frank told Casey and Morrison that 'Arno could not pay his rent because I—Carl Mayer—stole all of Arno's money.'" Carl Mayer was shocked to learn of these defamatory statements because Daniel (with supporting certifications from Jacqueline Burger and Frank Glaser) had unsuccessfully litigated these issues before the Superior Court of New Jersey culminating in a dismissal with prejudice in June 2021. The Superior Court of New Jersey, Appellate Division, dismissed Daniel's appeal with prejudice in December 2021.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

3.    In regard to paragraph #34 of the FAC, identify all facts upon which you base your contention that Frank purportedly made alleged defamatory statements to Robert F. Casey, Esq. on March 31, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

**ANSWER:**

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it

seeks "all facts" as it is overly broad, unduly burdensome and harassing. Notwithstanding the foregoing specific and general objections, <u>see</u> Response to Interrogatory No. 2.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

4.     In regard to paragraph #46 of the FAC, identify all facts upon which you base your contention that Frank purportedly made alleged defamatory statements to David Felsenthal, Esq. during the week of May 18, 2022 – May 26, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

   <u>ANSWER:</u>

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control.

Notwithstanding the foregoing specific and general objections, Plaintiffs learned of Frank's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same time frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants (including Frank) repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

5.     In regard to paragraph #47 of the FAC, identify all facts upon which you base your contention that Frank purportedly made alleged defamatory statements to Jason Brown, Esq. during the week of May 18, 2022 – May 26, 2022, including how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

   <u>ANSWER:</u>

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention

interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.

Notwithstanding the foregoing specific and general objections, Plaintiffs learned of Frank's defamatory statements to Jason Brown, Esq., David Felsenthal, Esq., and Dr. Naini, that Carl had stolen all of Arno's money and denied/blocked family members access to Arno during the week of May 18, 2022 to May 26, 2022 from Eliot Spitzer during that same frame, including the period of April 10, 2022 and May 18, 2022 to May 26, 2022. In these conversations with Eliot Spitzer, Mr. Spitzer told Carl Mayer in sum and substance that Defendants told Mr. Spitzer that "Carl denied all access to Arno and even 'cut off entirely' Arno's sister Ruth.'" Mr. Spitzer also told Carl Mayer that Defendants repeated these defamatory statements during the same time period to Mr. Spitzer, David Felsenthal, Esq., Jason Brown, Esq., and William Taylor.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

6.      In regard to paragraph #49 of the FAC, identify all facts upon which you base your contention that Frank purportedly made alleged defamatory statements that you had cut off all access to Arno for his sister, Ruth Burger, during the week of May 18, 2022 – May 26, 2022, including to whom the alleged statements were made, how you became aware of the alleged statements, when you became aware of the alleged statements, and the manner in which the alleged statements were made.

ANSWER:

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all facts" as it is overly broad, unduly burdensome and harassing.

Notwithstanding the foregoing specific and general objections, see Response to Interrogatory No. 5.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

7.      Describe in detail, including the date, those present/copied, and the substance of all written and oral communications you have had with Christopher M. Placitella, Esq. regarding

Frank's purported statements from March 31, 2022 to present, that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs further object to this interrogatory to the extent it seeks the substance of "all written and oral communications" and is overly broad, unduly burdensome and harassing. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, work product doctrine or similar statutory, joint defense privilege, common interest privilege or common law privilege.**

**Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with Christopher M. Placitella, Esq. about Defendants' defamatory statements on the following dates:**

1. **<u>March 30, 2022</u> (Mr. Placitella and Plaintiffs discussing Arno Mayer landlord case and Mr. Placitella providing legal advice).**
2. **<u>March 31, 2022</u> (Mr. Placitella informing Plaintiffs that he spoke to Mr. Casey and providing legal advice).**
3. **<u>April 3, 2022</u> (Plaintiffs discussing Defendants' defamatory statements with Mr. Placitella and providing legal advice).**
4. **<u>July 17, 2022 – July 20, 2022</u> (Plaintiffs discussing Arno Mayer case legal advice with Mr. Placitella).**
5. **<u>June 18, 2024</u> (Plaintiffs exchange emails with Mr. Placitella concerning this case).**
6. **<u>June 19, 2024</u> (Plaintiffs forwarding March 30, 2022 email to Mr. Casey about Defendants' defamatory comments, including Plaintiffs' recollection from call with Mr. Placitella that Casey told Mr. Placitella Defendants said "Carl stole all of Arno's money").**
7. **<u>June 20, 2024</u> (Plaintiffs and Mr. Placitella discussing case over telephone).**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

8.      Set forth all communications (written or oral) with Eliot Spitzer, from January 1, 2022 through present, of which you are aware, that supports a contention that Frank made the statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, spousal/marital communications privilege, work product doctrine or similar statutory or common law privilege.

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with other individuals about Defendants' defamatory statements on the following dates:

On May 25, 2022, Plaintiffs emailed Eliot Spitzer about Defendants' defamatory statements to Mr. Spitzer, William Taylor, Jason Brown, Esq. and David Felsenthal, Esq. Mr. Spitzer responded by email on May 26, 2022 and copied Jason Brown, Esq., William Taylor, David Felsenthal, Esq., Defendant Jacqueline Burger, Esq., and Defendant Daniel Mayer. Plaintiffs responded via email only to Mr. Spitzer on May 27, 2022.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

9. Set forth all communications (written or oral) with William Taylor, from January 1, 2022 through present, of which you are aware, that supports a contention that Frank made the statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all communications (written or oral)" and is overly broad, unduly burdensome and harassing. Notwithstanding the foregoing specific and general objections, Plaintiffs state that they did not believe they had communications with Mr. Taylor directly from January 1, 2022 to the present about this case.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

10. Set forth all communications (written or oral) with Michele Burger, from January 1, 2022 through present, of which you are aware, that supports a contention that Frank made the

statements alleged in the FAC from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this Interrogatory pursuant to Federal Rules of Civil Procedure 33(a)(2) and Local Civil Rule 33.1(d) on the grounds that it is a premature contention interrogatory and Plaintiffs have not completed their investigation of the facts pertinent to this litigation and have not completed discovery. Plaintiffs also object to this Interrogatory as it calls for a legal conclusion and the information sought is within Defendants' possession, custody or control. Plaintiffs further object to this interrogatory to the extent it seeks "all communications (written or oral)" and is overly broad, unduly burdensome and harassing.**

**Notwithstanding the foregoing specific and general objections, On May 4, 2022, Michele Burger responded via email to Daniel's May 3, 2022 defamatory statement (made via email) that she "agree[d] with everything Daniel said in his message" and that she "can't help but wonder if there was some financial reward that accompanied the award and if you're embezzling that too." Michele's May 4, 2022 email agreed with Daniel's May 3, 2022 defamatory statement that Carl "blocked [Arno's] access to [Daniel], his sister, and my kids." In the May 3, 2022 email, Daniel accuses Carl of manipulating Arno, a crime under N.J.S.A. 2C:24-8 (endangering the welfare of the elderly or disabled). The May 3, 2022 email repeated and related back to Defendants' prior false statements on or about March 31, 2022 that accused Carl of stealing his father Arno's money and blocking all access to Arno.**

**Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.**

11.     Describe in detail, including the date, those present/copied, and the substance of, all written and oral communications you have had with any other individuals (other than privileged communications with counsel representing you) regarding Frank's purported statements made from March 31, 2022 to present that you stole money from Arno and/or were keeping family members/friends away from Arno.

**ANSWER:**

**Plaintiffs object to this interrogatory on the grounds it is overly broad, unduly burdensome and harassing to the extent it seeks "the substance of all written and oral communications." Plaintiffs further object to this interrogatory on the grounds that it seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs object to this interrogatory on the grounds and to the extent that it seeks information subject to the attorney client privilege, spousal/marital communications privilege, work product doctrine or similar statutory or common law privilege.**

Notwithstanding the foregoing specific and general objections, Plaintiffs state that they had conversations with other individuals about Defendants' defamatory statements on the following dates:

On April 8, 2022, Plaintiffs emailed Mr. Casey about Defendants' defamatory statements, including that Mr. Casey "told Mr. Placitella that [Defendants] stated [Carl] stole Arno's money." Shortly after, Mr. Casey confirmed that he spoke to Mr. Placitella about "helping" Arno. Mr. Casey did not mention or deny that Defendants defamed Plaintiffs.

Plaintiffs specifically reserve the right to amend or supplement this response as discovery proceeds and should additional facts or documents be discovered, revealed, recalled, or otherwise ascertained.

## **CERTIFICATION**

I hereby certify that the foregoing Answers to Interrogatories are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

I hereby Certify that the copies of the reports annexed hereto rendered by either treating physician or proposed expert witnesses are exact copies of the entire report or reports provided by them; that the existence of other reports of said doctors or experts, either written or oral, are unknown to me, and if such becomes later known or available, I shall serve them properly on the propounding party.

BY: _____

Carl J. Mayer, Esq., Individually, and on behalf of
Mayer Law Group, LLC

Dated: 9/21/2024

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I served, or caused to be served, a true and correct copy of the foregoing Plaintiffs' Responses and Objections to the Defendants' Interrogatories, by email upon the following:

**GIBBONS P.C.**
Thomas J. Cafferty, Esq.
Nomi I. Lowy, Esq.
One Gateway Center
Newark, NJ 07102-5310
Tel:  (973) 596-4863
Fax: (973) 639-6267
*Attorneys for Defendant*
*Daniel P. Mayer*

**KENT & McBRIDE, P.C.**
Diana R. Brocco, Esq.
Kathryn V. McCallion, Esq.
1040 Kings Highway North, Suite 600
Cherry Hill, NJ 08034
Tel:  (856) 667-3113
*Attorneys for Defendants*
*Jacqueline Burger, Esq. and Frank Glaser, Esq.*

**FOX ROTHSCHILD LLP**

Dated:   September 24, 2024          By:   s/ Jeffrey M. Pollock
_____
Jeffrey M. Pollock, Esq.
Michael W. Sabo, Esq.
*Attorneys for Plaintiffs*

EXHIBIT 2

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone:  (973) 596-4863
Facsimile:  (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant Daniel P. Mayer*

Diana R. Brocco, Esq. (Bar No. 020261996)
**KENT & McBRIDE, P.C.**
1040 Kings Highway North – Suite 600
Cherry Hill, NJ 08034
PH: 856-667-3113
FX: 856-667-4003
Email: dbrocco@kentmcbride.com
*Attorneys for Defendants, Jacqueline Burger and Frank M. Glaser*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., <br><br> Defendants. | | Civil Action No. <br><br> 3:23-cv-02272-GC-JBD <br><br> Honorable Georgette Castner, U.S.D.J. <br><br> **DECLARATION OF DAVID FELSENTHAL, ESQ.** |

I, David Felsenthal, Esq., of full age, do hereby certify and declare as follows:

1.      I am an attorney at law licensed in the State of New York and was a Partner at Clifford Chance, LLP, located in New York, New York, until early 2022.

2.      In May of 2022, during the time period relevant to the above-captioned action, I was working at the Commodity Futures Trading Commission as Counsel to the Chairman.

3.      I am providing this Declaration at the request of Daniel P. Mayer ("Daniel"), Jacqueline Burger ("Jackie"), and Frank Glaser ("Frank"), Defendants in this action.

4.      I have read the First Amended Complaint ("FAC") filed in the above-captioned matter by Daniel's brother, Carl Mayer ("Carl" ), and Carl's law firm, Mayer Law Group, LLC.

5.      My name appears in Paragraphs 46 and 60 of the FAC in connection with statements purportedly made to me by Daniel, Jackie, and Frank. Specifically, the FAC provides:

> 46.     During the week of May 18, 2022 to May 26, 2022, Defendants made related false made false [sic] and defamatory statements that Carl had stolen all of Arno's money and denied family members all access to Arno to attorney David Felsenthal, Esq., a partner in the New York office of Clifford Chance, LLP, one of the largest law firms in the world. Prior to Defendants' contact with Mr. Felsenthal, Esq., Carl had enjoyed a decades-long relationship with Mr. Felsenthal extending back to their college days at Princeton University, in Princeton, New Jersey.
>
> ***
>
> 60.     During the week of May 18, 2022 to May 26, 2022, Defendants made related false made false [sic] and defamatory statements that Carl had stolen all of Arno's money and denied family members all access to Arno to attorney David Felsenthal, Esq., a partner in the New York

2

office of Clifford Chance, LLP, one of the largest law firms in the world.

6.    While it is true that Carl and I have enjoyed a decades-long relationship extending back to our college days at Princeton University, I can state with certainty that Daniel never communicated to me, orally or in writing, that Carl had stolen all (or any) of their father Arno Mayer's ("Arno") money or that Carl had denied family members access to Arno.

7.    Additionally, I can state with certainty that Jackie never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno.

8.    Additionally, I can state with certainty that Frank never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno.

9.    Although Carl and I are both attorneys and have had a long-term friendship, we have never had a professional relationship.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


Dated: May 14 , 2024                    By: _____
                                              DAVID FELSENTHAL, ESQ.

# EXHIBIT 3

Diana R. Brocco, Esq. (Bar No. 020261996)
**KENT & McBRIDE, P.C.**
1040 Kings Highway North – Suite 600
Cherry Hill, NJ 08034
PH: 856-667-3113
FX: 856-667-4003
Email: dbrocco@kentmcbride.com
*Attorneys for Defendants, Jacqueline Burger and Frank M. Glaser*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., <br><br> Defendants. | Civil Action No. <br><br> 3:23-cv-02272-GC-JBD <br><br> Honorable Georgette Castner, U.S.D.J. <br><br> **DECLARATION OF ROBERT F. CASEY, ESQ.** |

I, Robert F. Casey, Esq., of full age, do hereby certify and declare as follows:

1.    I am an attorney at law licensed in the State of New Jersey and a Partner at Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC located at 136 Franklin Corner Road, B2, Lawrenceville, New Jersey 08648.

2.    I am providing this Declaration at the request of Jacqueline Burger ("Jackie") and Frank Glaser ("Frank"), Defendants in this action.

3.     I have read the First Amended Complaint ("FAC") filed in the above-captioned matter by Daniel's brother, Carl Mayer ("Carl"), and Carl's law firm, Mayer Law Group, LLC.

4.     My name appears in Paragraphs 33-36 and 58 of the FAC in my capacity as counsel to the landlord for the apartment complex in which Daniel and Carl's father, Arno Mayer ("Arno"), lived during the time period set forth in the FAC. Jack Morrison, the landlord's representative, whom I represented in connection with Arno's tenancy, is also named in the body of the FAC, Paragraphs 32-34 and 36.

5.     I can state with certainty that Jackie never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno.

6.     Additionally, I can state with certainty that Frank never communicated to me, orally or in writing, that Carl had stolen all (or any) of Arno's money or that Carl had denied family members access to Arno. In fact, to the best of my knowledge, I have never communicated with Frank in my life.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 6/13      , 2024

By: _____
ROBERT F. CASEY, ESQ.

2

EXHIBIT 4

**KENT & McBRIDE, P.C.**
Diana R. Brocco, Esquire
ATTORNEY ID: 020261996
1040 Kings Highway North, Suite 600
Cherry Hill, NJ 08034
856-667-3113 -- Telephone
*Attorney for Defendants, Jacqueline Burger, Esquire and Frank Glaser, Esquire*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| Carl J. Mayer, Esquire and Mayer Law Group, LLC, | Civil Action No.<br>3:23-cv-02272-GC-JBD<br>Honorable Georgette Castner, U.S.D.J. |
| Plaintiff, | |
| v. | |
| Daniel P. Mayer, Jacqueline Burger, Esquire and Frank M. Glaser, Esquire, | **DEFENDANT, JACQUELINE BURGER, ESQUIRE'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |
| Defendants. | |

**GENERAL OBJECTIONS**

Answering Defendant's responses to each request is made subject to these general objections. Answering Defendant sets them out here to avoid repeating them in response to each interrogatory. Answering Defendant's failure to specifically cite an objection in response to a particular interrogatory should not be construed as a waiver of that objection. By agreeing to produce or referring to documents in response to these interrogatories, Answering Defendant does not concede the admissibility of any document or that the document is original, true, accurate or complete.

1.      Answering Defendant objects to these requests to the extent they seek information and/or documents protected from disclosure by the attorney/client privilege, the work product doctrine, and any other applicable rule, privilege, protection or immunity, or court order.

2.      Answering Defendant objects to these requests to the extent they are overly broad, unduly burdensome, harassing, and/or vexatious.

**Without waiving said objections, and upon advice of counsel, Answering Defendant did not have verbal communications with Karen Mayer regarding the Arno Allegations during the Relevant Time Period.**

**By way of further response and upon the advice of counsel, by way of reference only and not intended as an adoptive admission, see the attached written communications provided in response to Answering Defendant's Notice for Production.**

INTERROGATORY NO. 11.    Identify all communications between You and Dr. Naini concerning the Arno Allegations during the Relevant Time Period.

**ANSWER:    Objection. Answering Defendant objects to this interrogatory as it is vague, overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, beyond the scope of this phase of discovery, and calls for information subject to the attorney-client privilege and work product doctrine.**

**Without waiving said objections, and upon advice of counsel, none.**

**See also Dr. Naini's June 13, 2024 Declaration attached hereto.**

INTERROGATORY NO. 12.    Identify all communications between or among You, any Third-Party Witness, and any other person concerning the Arno Allegations during the Relevant Time Period.

**ANSWER:    Objection. Answering Defendant objects to this interrogatory as vague, overly broad, unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, as beyond the scope of this phase of discovery, and requests information including attorney work product, which is privileged. By way of further response and upon the advice of counsel, Answering Defendant objects to this interrogatory as it calls for information subject to the spousal privilege pursuant to N.J.S.A. 2A:84A-22 in regard to communications had between Answering Defendant and her husband, Defendant Frank Glaser.**

**Without waiving said objections, and upon advice of counsel, Answering Defendant did not have any communications with Third-Party Witnesses beyond those already identified herein.**

INTERROGATORY NO. 13.    Identify and describe each of Your methods, and programs for creating, saving, storing, maintaining, sharing, backing up, and restoring documents and communications during the Relevant Time Period. For the avoidance of doubt "identify" has the meaning defined above, and includes as well for this interrogatory, the

identification of the date that You began to use such system or program or method; the date that You ceased to use such system or program or method; the systems, methods, and programs used; the locations where the documents and communications are stored or maintained; the locations where any back-up data or documents are stored, especially and including for those systems, programs, or methods no longer in active use; the hardware used to store the documents and communications and any backups; the policies governing the use of the systems, programs, or methods; and the policies governing the retention of documents and communications.

**ANSWER:**     **Objection. Answering Defendant objects to this interrogatory as it is vague, overly broad, unduly burdensome, and confusing and is not reasonably calculated to lead to the discovery of admissible evidence, and is beyond the scope of this phase of discovery.**

**Without waiving said objection, any communications which are attached hereto in response to Plaintiff's interrogatories and/or Document Production were made via Answering Defendant's computer through email and/or text messages.  Any verbal communications were made over mobile phone and/or landline.**

EXHIBIT 5

**KENT & McBRIDE, P.C.**
Diana R. Brocco, Esquire
ATTORNEY ID: 020261996
1040 Kings Highway North, Suite 600
Cherry Hill, NJ 08034
856-667-3113 -- Telephone
*Attorney for Defendants, Jacqueline Burger, Esquire and Frank Glaser, Esquire*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| Carl J. Mayer, Esquire and Mayer Law Group, LLC, <br><br> Plaintiff, <br><br> v. <br><br> Daniel P. Mayer, Jacqueline Burger, Esquire and Frank M. Glaser, Esquire, <br><br> Defendants. | Civil Action No. <br> 3:23-cv-02272-GC-JBD <br> Honorable Georgette Castner, U.S.D.J. <br><br><br> **DEFENDANT, FRANK M. GLASER, ESQUIRE'S ANSWERS TO PLAINTIFFS' FIRST SET OF INTERROGATORIES** |

**<u>GENERAL OBJECTIONS</u>**

Answering Defendant's responses to each request is made subject to these general objections. Answering Defendant sets them out here to avoid repeating them in response to each interrogatory. Answering Defendant's failure to specifically cite an objection in response to a particular interrogatory should not be construed as a waiver of that objection. By agreeing to produce or referring to documents in response to these interrogatories, Answering Defendant does not concede the admissibility of any document or that the document is original, true, accurate or complete.

1.       Answering Defendant objects to these requests to the extent they seek information and/or documents protected from disclosure by the attorney/client privilege, the work product doctrine, and any other applicable rule, privilege, protection or immunity, or court order.

2.       Answering Defendant objects to these requests to the extent they are overly broad, unduly burdensome, harassing, and/or vexatious.

**By way of further response and upon the advice of counsel, by way of reference only and not intended as an adoptive admission, see the attached written communications provided in response to Answering Defendant's Notice for Production.**

INTERROGATORY NO. 11.        Identify all communications between You and Dr. Naini concerning the Arno Allegations during the Relevant Time Period.

**ANSWER:    Objection. Answering Defendant objects to this interrogatory as vague, overly broad, unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, as beyond the scope of this phase of discovery, and requests information including attorney work product, which is privileged.**

**Without waiving said objection, and upon advice of counsel, none.**

**See also Dr. Naini's June 13, 2024 Declaration attached hereto.**

INTERROGATORY NO. 12. Identify all communications between or among You, any Third-Party Witness, and any other person concerning the Arno Allegations during the Relevant Time Period.

**ANSWER:    Objection. Answering Defendant objects to this interrogatory as vague, overly broad, unduly burdensome, as not reasonably calculated to lead to the discovery of admissible evidence, as beyond the scope of this phase of discovery, and requests information including attorney work product, which is privileged.  By way of further response and upon the advice of counsel, Answering Defendant objects to this interrogatory as it calls for information subject to the spousal privilege pursuant to N.J.S.A. 2A:84A-22 in regard to communications had between Answering Defendant and his wife,  Defendant Jacqueline Burger.**

**Without waiving said objection, and upon advice of counsel, Answering Defendant did not have any communications with Third-Party Witnesses beyond those discussed herein.**

INTERROGATORY NO. 13.        Identify and describe each of Your methods, and programs for creating, saving, storing, maintaining, sharing, backing up, and restoring documents and communications during the Relevant Time Period. For the avoidance of doubt "identify" has the meaning defined above, and includes as well for this interrogatory, the identification of the date that You began to use such system or program or method; the date that You ceased to use such system or program or method; the systems, methods, and programs used; the locations where the documents and communications are stored or maintained; the locations where any back-up data or documents are stored, especially and including for those systems,

programs, or methods no longer in active use; the hardware used to store the documents and communications and any backups; the policies governing the use of the systems, programs, or methods; and the policies governing the retention of documents and communications.

**ANSWER:**   **Objection. Answering Defendant objects to this interrogatory as it is vague, overly broad, unduly burdensome, and confusing and is not reasonably calculated to lead to the discovery of admissible evidence, and is beyond the scope of this phase of discovery.**

**Without waiving said objection, any communications which are attached hereto in response to Plaintiff's interrogatories and/or Document Production were made via Answering Defendant's computer through email.  Any verbal communications were made over mobile phone and/or landline.**

EXHIBIT 6

**KENT/McBRIDE**

1040 Kings Highway North, Suite 600
Cherry Hill, NJ. 08034
Phone: 856 667 3113
Fax: 856 667 4003
Fax: 856 667 1966
www.kentmcbride.com

Diana R. Brocco, Esquire
Direct Dial: 856 382 3663
dbrocco@kentmcbride.com

November 22, 2024

James R. Kravitz, Esquire
Fox Rothschild, LLP
997 Lennox Drive, Building 3
Lawrenceville, NJ 08648

> **RE: Carl J. Mayer, Esquire v. Jackie Burger, Esquire and Frank M. Glaser, Esquire**
> **Docket No.:  NJ Mercer County MER-L-623-23**
> **Claim No.: IWN0319**
> **D/A:  4/1/2022**
> **Our File No.: 224.84736**

Dear Mr. Kravitz:

Please accept this correspondence as a follow-up from the November 6, 2024 meet and confer on behalf of Defendants, Jacqueline Burger, Esq. and Frank M. Glaser, Esq.

## A. SUPPLEMENTAL RESPONSES WITH BATES NUMBERS

Defendants, Jacqueline Burger, Esq. and Frank M. Glaser, Esq. hereby incorporate and reiterate their September 24, 2024 responses and objections to Plaintiffs' discovery requests to include supplemental responses with bates number identifying responsive communications to Interrogatories Nos. 1-4, 7, 8, 10, and 12. Please find Defendants supplemental responses attached hereto.

## B. DEFENDANTS' EMAIL ACCOUNTS/DOMAIN NAMES/PHONE NUMBERS

Additionally, Plaintiffs have requested that Defendants identify the email accounts, domain names, and phone numbers used that were searched for responsive documents.

As to both Defendants: Defendants used a Verizon internet server in their home but later changed their server to Visible Wireless sometime in 2023.

As to Frank Glaser, Esq.: Frank is the custodian of his cell phone, at number (917) 873-6309. Frank searched the contents of his cell phone for all communications between him, the parties, and/or named third-party witnesses for responsive documents to discovery. Frank is also the custodian of the following email addresses: fglaser@gmail.com; fglaser@sent.com; fg@sent.com; and fglaser@gmail.com. Frank searched the contents of these email addresses for all communications between him, the parties, and/or named third-party witnesses for responsive

James R. Kravitz, Esquire
November 22, 2024
Page 2

documents to discovery. Notably, Frank used his email address, fglaser@gmail.com, for communications during the Relevant Time Period.

As to Jacqueline Burger, Esq.: Jackie is the custodian of her cell phone, at number (347) 267-2632, and email address at jackieburger56@gmail.com. Jackie searched the contents of both her cell phone and email address for all communications between her, the parties, and/or named third-party witnesses for responsive documents to discovery.

## C. DEFENDANTS' REQUEST FOR UNREDACTED EMAIL CORRESPONDENCE BETWEEN CARL MAYER AND CHRISTOPHER PLACITELLA

Further, Defendants maintain their position that Plaintiffs must provide unredacted copies of the emails produced between Carl Mayer and Christopher Placitella from March 30, 2022 – April 3, 2022, and July 17, 2022 – July 20, 2022 (See CarlMayer0000001 – CarlMayer0000002 and CarlMayer0000005 – CarlMayer0000013), as they are not protected by the attorney-client privilege. Plaintiffs never provided a privilege log in their responses to discovery.

Under the "in-issue" doctrine, "the attorney-client shield may be pierced when confidential communications are made a material issue by virtue of the allegations in the pleadings and where such information cannot be secured from any less intrusive source." United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 555 (Super. Ct. App. Div. 1984); see also Payton v. New Jersey Tpk. Auth., 148 N.J. 524 (N.J. 1997). Further, the New Jersey Supreme Court in State v. Mauti, 208 N.J. 519 (N.J. 2012) held that "a privilege may be waived 'implicitly' where a party puts a confidential communication 'in issue' in a litigation" and further concluded that "the party who places a confidential communication in issue voluntarily creates the 'need' for disclosure of those confidences to the adversary." Id. at 531-32.

Here, Plaintiffs named Christopher Placitella, Esq. as a witness with direct knowledge of the alleged defamatory statements made by Defendants in the FAC. See FAC, para. 36. Further, Plaintiffs allege that as a result of the defamatory statements, Plaintiffs suffered a loss in gross income because Mr. Placitella limited his communication with Carl which affected their professional relationship. See FAC, para. 37-38.

In light of these facts, it is clear that Plaintiffs have put all communications with Mr. Placitella in-issue for this lawsuit and Defendants are entitled to review unredacted versions of said communications to properly defend the claims against them. "A party may not abuse a privilege, including the attorney-client privilege, by asserting a claim or defense and then refusing to provide the information underlying that claim or defense based on the privilege." Payton v. N.J. Tph. Auth., 148 N.J. 524, 553 [citing to United Jersey Bank v. Wolosoff, 196 N.J. Super. 553,

James R. Kravitz, Esquire
November 22, 2024
Page 3

565-67 (Super. Ct. App. Div. 1984)].

      Therefore, to avoid the necessity of motion practice, please provide unredacted copies of the emails produced between Carl Mayer and Christopher Placitella from March 30, 2022 – April 3, 2022, and July 17, 2022 – July 20, 2022. <u>See</u> CarlMayer0000001 – CarlMayer0000002 and CarlMayer0000005 – CarlMayer0000013.

      If you would like to discuss any of these issues or any other aspects of the case, please do not hesitate to contact the undersigned.

               Very truly yours,

               **KENT/McBRIDE, P.C.**

               BY *Diana R. Brocco*
                   Diana R. Brocco, Esquire

DRB/acr
cc:    Nomi I. Lowy, Esquire

EXHIBIT 7

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4863
Facsimile: (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant Daniel P. Mayer*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, L.L.C., | Civil Action No. 3:23-cv-02272-GC-JBD Honorable Georgette Castner, U.S.D.J. |
| Plaintiff, v. DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., | **SUPPLEMENTAL DECLARATION OF ROBERT F. CASEY, ESQ.** |
| Defendants. | |

I, Robert F. Casey, Esq. of full age, do hereby certify and declare as follows:

1.     I am an attorney at law licensed in the State of New Jersey and a Partner at Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, located at 136 Franklin Corner Road, B2, Lawrenceville, New Jersey 08648.

2.    I am providing this Supplemental Declaration to supplement my May 15, 2024 Declaration, which was provided at the request of Daniel P. Mayer ("Daniel"), a Defendant in this action.

3.    As noted in my May 15, 2024 Declaration, I was counsel to the landlord for the apartment complex in which Daniel and Carl Mayer's ("Carl") father, Arno Mayer ("Arno"), lived during the time period set forth in the First Amended Complaint ("FAC") herein.

4.    My May 15, 2024 Declaration referenced a letter I sent by email to Carl and Arno, with a copy to Daniel, concerning non-payment of rent in April of 2022.

5.    It has come to my attention since providing my May 15, 2024 Declaration that I also sent an email to Carl and Daniel on October 15, 2020. I copied Daniel on that email because I had received no return communication from Carl regarding rental amounts due on Arno's apartment. At that time, there was an unpaid balance of $23,400.00. I was not reaching out to Arno directly at Carl's direction.

6.    These two written communications are, to the best of my knowledge and recollection, the only ones I had that included Daniel. These communications did not occur during the time frame set forth in the FAC and, in any event, were communications I sent, not Daniel.

7.    At no time has Daniel stated to me, either orally or in writing, that Carl

was stealing their father's money or that Carl was keeping family members and/or friends from Arno, as Plaintiffs have alleged in the FAC.

8.    Indeed, as set forth in my May 15, 2024 Declaration, to the best of my knowledge and recollection, I have never spoken to Daniel.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 6/12, 2024

By: _____
ROBERT F. CASEY, ESQ.

EXHIBIT 8

Thomas J. Cafferty, Esq. (Bar No. 283721972)
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
Telephone: (973) 596-4863
Facsimile: (973) 639-6267
Email: tcafferty@gibbonslaw.com
*Attorneys for Defendant Daniel P. Mayer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL J. MAYER, ESQ., and MAYER LAW GROUP, L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL P. MAYER, JACQUELINE BURGER, ESQ., and FRANK M. GLASER, ESQ., <br><br> Defendants. | Civil Action No. <br> 3:23-cv-02272-GC-JBD <br> Honorable Georgette Castner, U.S.D.J. <br><br> **DECLARATION OF** <br> **DR. SEAN NAINI** |

I, Dr. Sean Naini, of full age, do hereby certify and declare as follows:

1.    I am an Internal Medicine specialist, licensed in the State of New Jersey, and I reside at 181 Witherspoon Street, Princeton, NJ 08540.

2.    I am providing this Declaration at the request of Daniel P. Mayer ("Daniel"), Jacqueline Burger, and Frank Glaser, Defendants in this action.

3.    I have read the First Amended Complaint ("FAC") filed in the above-captioned matter by Daniel's brother, Carl Mayer ("Carl" ), and Carl's law firm, Mayer Law Group, LLC.

4.    My name appears in Paragraphs 49, 50, and 63 of the FAC in my capacity as personal physician and friend to Daniel and Carl's father, Arno Mayer ("Arno"). Specifically, the FAC provides:

> 49.    Defendant Frank repeatedly and falsely stated multiple times during the week of May 18, 2022 to May 26, 2022 that Carl had cut off all access to Arno for his sister, Ruth Burger. This statement was false because Carl established specific visitation protocols for all of Arno's family and friends in consultation with Arno's primary physician and friend, Dr. Sean Naini, and with counsel and medical staff for Humana/SeniorBridge—a Fortune 500 Company that provided health care to Professor Mayer at his apartment. Arno's visitor log also disproves Defendants' false claims that Carl denied and blocked Defendants' access to Arno.

> 50.    During the week of May 18, 2022 through May 26, 2022, Daniel made related false and defamatory statements that Carl had stolen all of Arno's money and denied family members access to Arno to Dr. Sean Naini, Arno's personal physician and friend of 25 years. Dr. Naini resides at 181 Witherspoon Street, Princeton, New Jersey 08540.

> 63.    During the week of May 18, 2022 through May 26, 2022, Daniel made related false and defamatory statements that Carl had stolen all of Arno's money and denied family members access to Arno to Dr. Sean Naini, Arno's personal physician and friend of 25 years.

5.     I can say with certainty that I did not have any communications, orally or in writing, with Daniel as set forth in Paragraphs 49, 50, and 63 of the FAC.

6.     Specifically, Daniel has never communicated to me, either orally or in writing, that Carl had stolen Arno's money and/or that Carl denied family members access to Arno.

7.     Additionally, to the best of my knowledge and recollection, I have never spoken to and/or communicated in writing with Jacqueline Burger or Frank Glaser, the other named Defendants in this matter.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: 6/13 , 2024

By: _____
DR. SEAN NAINI

4